# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD,
BLOOMBERG L.P.,

        Plaintiffs,

        v.

U.S. DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF
INVESTIGATION,

        Defendants.

Civil Action No. 1:25-cv-02848

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ....................................................................................................... ii

**INDEX OF EXHIBITS** ...................................................................................................... vi

**INTRODUCTION** .............................................................................................................. 1

BACKGROUND .................................................................................................................. 2

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

    I.    Defendants' Search for Records Was Reasonable Under FOIA ........................... 4

      A.   FBI Conducted a Reasonable Search for Records Responsive to the 215, 217, 219, and 665 Requests ............................................................................................... 5

      B.   OIP Conducted a Reasonable Search for Records Responsive to The 804 Request 7

    II.   Information in the Requested Records was Properly Withheld Under FOIA Exemptions 3, 5, 6, and 7 ................................................................................................ 8

      A.   Information Exempted from Disclosure by Statute was Properly Withheld Pursuant to Exemption 3 ............................................................................................. 9

      B.   Information Subject to Litigation Privileges Was Properly Withheld Pursuant to Exemption 5 ................................................................................................................ 9

      C.   The Records at Issue in This Case Qualify for Exemption 7 ........................... 12

      D.   Information That Would Interfere with Pending Law Enforcement Investigations Was Properly Withheld Under Exemption 7(A) ....................................................... 13

      E.   Personal Information Was Properly Withheld Pursuant to Exemption 6 and 7(C) Because Disclosure Would Constitute an Unwarranted Invasion of Privacy ........... 14

      F.   Confidential Source Information Was Properly Withheld Pursuant to Exemption 7(D) 16

      G.   Information About Law Enforcement Methods and Techniques Was Properly Withheld Pursuant to Exemption 7(E) ...................................................................... 17

    III.  Disclosure of Redacted or Withheld Material Would Foreseeably Harm Interests Protected by FOIA Exemptions .................................................................................... 19

    IV.  There Is No Further Segregable, Non-Exempt Information To Release .............. 20

**CONCLUSION** ............................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*August v. FBI,*
    328 F.3d 697 (D.C. Cir. 2003) ...................................................................... 8

*Bigwood v. U.S. Dep't of Def.,*
    132 F. Supp. 3d 124 (D.D.C. 2015) ............................................................. 4

*Boehm v. FBI,*
    948 F. Supp. 2d 9 (D.D.C. 2013) ................................................................ 4

*Campaign Legal Ctr. v. U.S. Dep't of Just.,*
    34 F.4th 14, 19 (D.C. Cir. 2022) ............................................................... 10

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,*
    746 F.3d 1082 (D.C. Cir. 2014) ................................................................ 14

*Corley v. U.S. Dep't of Just.,*
    998 F.3d 981 (D.C. Cir. 2021) .................................................................. 10

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.,*
    331 F.3d 918 (D.C. Cir. 2003) .................................................................... 8

*Food Mktg. Inst. v. Argus Leader Media,*
    588 U.S. 427 (2019) ................................................................................... 9

*Gilliam v. U.S. Dep't of Just.,*
    128 F. Supp. 3d 134 (D.D.C. 2015) ............................................................ 3

*Hickman v. Taylor,*
    329 U.S. 495 (1947) ................................................................................. 12

*In re Lindsey,*
    158 F.3d 1263 (D.C. Cir. 1998) ................................................................ 11

*Johnson v. FBI,*
    118 F. Supp. 3d 784 (E.D. Pa. 2015) ....................................................... 14

*Judicial Watch, Inc. v. U.S. Dep't of Def.,*
    715 F.3d 937 (D.C. Cir. 2013) (per curiam) .............................................. 9

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ................................................................. 11

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) .................................................................... 4

*Muslim Advocates v. U.S. Dep't of Just.,*
    833 F. Supp. 2d 92 (D.D.C. 2011) .................................................................. 17

*Nation Magazine v. U.S. Customs Serv.,*
    71 F.3d 885 (D.C. Cir. 1995) ...................................................................... 14

*Nat'l Archives & Recs. Admin. v. Favish,*
    541 U.S. 157 (2004) ................................................................................. 13

*Nat'l Ass'n of Crim. Def. Laws. v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys (NACDL),*
    844 F.3d 246 (D.C. Cir. 2016) ....................................................... 10, 12, 20

*Nat'l Ass'n of Home Builders v. Norton,*
    309 F.3d 26 (D.C. Cir. 2002) ....................................................................... 9

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ................................................................................. 10

*Nova Oculus Partners, LLC v. SEC,*
    486 F. Supp. 3d 280 (D.D.C. 2020) ............................................................ 16

*Oglesby v. U.S. Dep't of the Army,*
    920 F.2d 57 (D.C. Cir. 1990) ....................................................................... 4

*Ortiz v. U.S. Dep't of Health & Human Servs.,*
    70 F.3d 729 (2d Cir. 1995) ........................................................................ 17

*Pub. Empls. for Env't Resp. v. U.S. Section, Int'l Boundary and Water Comm'n,*
    740 F.3d 195 (D.C. Cir. 2014) ................................................................... 13

*Reps. Comm. for Freedom of the Press v. FBI,*
    3 F.4th 350 (D.C. Cir. 2021) ...................................................................... 19

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) .................................................................... 4

*Schoenman v. FBI,*
    575 F. Supp. 2d 166 (D.D.C. 2008) ............................................................ 15

*Schrecker v. U.S. Dep't of Just.,*
    349 F.3d 657 (D.C. Cir. 2003) ..................................................................... 5

*Steinberg v. U.S. Dep't of Just.*
    23 F.3d 548 (D.C. Cir. 1994) ....................................................................... 4

*Tax Analysts v. Internal Revenue Serv.,*
    117 F. 3d 607 (D.C. Cir. 1997) ................................................................... 11

iv

*U.S. Dep't of Air Force v. Rose,*
425 U.S. 352 (1976) ........................................................................................... 15

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press,*
489 U.S. 749 (1989) ........................................................................................... 15

*U.S. Dep't of State v. Ray,*
502 U.S. 164 (1982) ............................................................................................. 9

*U.S. Dep't of State v. Wash. Post Co.,*
456 U.S. 595 (1982) ........................................................................................... 15

*U.S. Fish & Wildlife Serv. v. Sierra Club,*
592 U.S. 261 (2021) ........................................................................................... 10

*Upjohn Co. v. United States,*
449 U.S. 383 (1981) ........................................................................................... 11

*Williams v. FBI,*
69 F.3d 1155 (D.C. Cir. 1995) .......................................................................... 16

## Statutes

5 U.S.C. § 552 ............................................................................................. *passim*

18 U.S.C. § 2255 ................................................................................................. 14

18 U.S.C. § 3509 ............................................................................................. 9, 14

## Rules of Procedure

Fed. R. Civ. P. 56 ................................................................................................. 4

Federal Rule of Civil Procedure 56 ..................................................................... 1

Federal Rule of Criminal Procedure 6 ................................................................. 9

**INDEX OF EXHIBITS**

- Declaration of Amie Marie Napier and Supporting Exhibits
- Declaration of Vanessa Brinkmann and Supporting Exhibits
- Statement of Material Facts Not In Dispute

## INTRODUCTION

The Freedom of Information Act ("FOIA") requires federal agencies to make reasonable efforts to search for, and process, federal records responsive to a request from the public for their disclosure. FOIA also exempts from disclosure information that is protected by federal statute, subject to litigation privileges, would constitute an invasion of personal privacy, and sensitive law enforcement information. In this case, Plaintiffs seek records related to the processing of records from the Jeffrey Epstein investigation, contained in five separate FOIA requests. Compl. ¶ 1, ECF No. 1. The Office of Information Policy ("OIP") of the Department of Justice ("DOJ"), and the Federal Bureau of Investigation ("FBI"), a sub-agency of DOJ, have completed a search for records responsive to these requests, and released those responsive records to Plaintiffs, with redactions and withholdings as allowed by FOIA. These efforts are outlined in the attached declarations of Amie Marie Napier and Vanessa Brinkmann, and satisfy the reasonableness standard imposed by FOIA. Moreover, the redactions and withholdings applied to the results of these searches are supported by FOIA's exemptions and the facts attested to be Ms. Napier and Ms. Brinkmann.

Defendants have discharged their obligations under FOIA. Accordingly, the Court should grant their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and enter judgment in favor of Defendants.[1]

---

[1] During the lapse in appropriations, Department of Justice attorneys were limited in the matters they could work on, including this one. As a Senate confirmed Presidential Appointee, the undersigned, Associate Attorney General Stanley E. Woodward, Jr., was not subject to this limitation and thus worked on this matter to meet the DOJ's court-imposed deadlines.

## BACKGROUND

This case concerns five separate FOIA requests submitted by Plaintiffs, which Plaintiffs state are related to the Jeffrey Epstein investigation.  Compl. ¶ 1, ECF No. 1. The requests are summarized in Table 1, below.

**Table 1: FOIA Requests at Issue in This Case**

| Request No. | Records Sought |
|---|---|
| FBI 1664219-000 (the "219 Request") | Six sub-part requests for records regarding instructions to FBI "RIDS personnel and personnel/agents from the FBI's New York and Washington Field to meet at FBI RIDS' offices in Virginia to process files/records of deceased billionaire Jeffrey Epstein," from March 21 to the present.  Compl. ¶ 8.[2] |
| FBI 1664215-000 (the "215 Request") | "[P]rocessing guidelines, guidance or slide decks provided to FBI employees who are tasked with reviewing and processing Jeffrey Epstein files for public release." Compl. ¶ 22. |
| FBI 1664217-000 (the "217 Request") | "A copy of the 'comprehensive report' based on the investigation FBI Director Kash Patel was directed to conduct by Attorney General Pam Bondi on February 27 and 'proposed personnel actions' related to what AG Bondi said was the FBI's failure to turn over to her the complete set of documents on deceased banker and convicted sex offender Jeffrey Epstein." Compl. ¶ 36. |
| OIP FOIA-2025-05804 (the "804 Request") | "Final talking points relating to the Justice Department's final decision on July 7 to refrain from releasing additional records related to the Jeffrey Epstein investigation, his 'client list' and his suicide in a New York jail as well as the release of the raw and enhanced video footage of the common area of the Special Housing Unit (SHU) where Epstein was housed at the time of his death."  Compl. ¶ 50. |
| FBI 1675665-000 (the "665 Request") | The 665 Request contains three sub-parts: |

---

[2] Initially, the requestor asked to "keep[] this request to under 50 pages in order to land in the simple track in hopes of receiving responsive records in a timely fashion," but later withdrew that request.   Compl. ¶¶ 2, 16.

| Request No. | Records Sought |
|---|---|
| | 1.    All communications to/from the FBI's NY Field Office senior executives from FBIHQ and/or the Department of Justice containing instruction, direction, or discussion about the conduct of research they were asked/directed to conduct related to Jeffrey Epstein files. 2.    Any communications between NYFO personnel relating to the guidance/direction they received from DOJ and FBIHQ about the searches of Jeffrey Epstein material. 3.    Any and all documents related to overtime hours worked by RIDS FOIA units from January 20, 2025 through the present.[3]  Compl. ¶ 59. |

On October 14, 2025, this Court ordered Defendants to produce a *Vaughn* index and supporting dispositive motion within 30 days.  ECF No. 14.  Defendants moved to clarify that order on October 15, 2025. ECF No. 16.  Later that same day, the Court entered an order clarifying "that the government shall file a *Vaughn* index with a supporting motion either ten days after the end of the lapse in appropriations *or* 30 days from the October 14, 2025 Order—whichever comes later."  ECF No. 17 (emphasis in original).  Defendants have now completed their search for, and processing of, records responsive to this request.  FBI released responsive records to Plaintiffs, along with a *Vaughn* index, on November 24, 2025.  OIP sent a final response letter reflecting a single record withheld in full on the same day.

## STANDARD OF REVIEW

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. Dep't of Just.*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3] This third request does not include "individual time cards"; instead, the requestor clarified that he seeks "broader statistics and analytics data reflecting hours worked."  Compl. ¶ 59.

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA action, summary judgment may be granted on the basis of information provided in declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).  Agency declarations "are afforded a presumption of good faith, and can be rebutted only with evidence that the agency's search was not made in good faith." *Boehm v. FBI*, 948 F. Supp. 2d 9, 19 (D.D.C. 2013) (citations omitted); *accord SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (the agency's FOIA search declaration is entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents" (internal citation omitted)).

## ARGUMENT

### I.     Defendants' Search for Records Was Reasonable Under FOIA

Defendants move for summary judgment as to the reasonableness of their search for records under FOIA.  To obtain summary judgment on the question of search adequacy, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents."  *Steinberg v. U.S. Dep't of Just.* 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted).  "To demonstrate that a search for documents was reasonable at the summary judgment phase, a federal agency may submit 'reasonably detailed' affidavits or declarations that describe the search performed."  *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (citation omitted).  "There is no requirement that an agency search every record system"—rather, the agency must only conduct a good-faith, reasonable search of those systems or records "likely to produce responsive documents."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Searching for records responsive to a FOIA request is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro-manage the executive

4

branch."  *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

### A.    FBI Conducted a Reasonable Search for Records Responsive to the 215, 217, 219, and 665 Requests

#### 1.    FBI Relied Upon The Relevant "62 File" To Search For Documents

Upon initial review of the 215 Request, FBI "determined that the majority of information responsive to these requests would be located within" a specific "62 File" within FBI's systems.  Decl. of Amie Marie Napier ("Napier Decl.") ¶ 25.   The 62 File "was created to maintain records processed for production to DOJ in compliance" with a letter from the Attorney General to the Director of FBI seeking more fulsome review and disclosure of records related to Mr. Epstein.  *Id.*; *see also* Letter from Attorney General Pamela Bondi to FBI Director Kash Patel, Feb. 27, 2025, https://www.justice.gov/ag/media/1391331/dl?inline.   The "FBI reasonably focused its search on the 62 File because that case file was created and maintained for the purpose of compiling records relevant to the subject matter of Plaintiffs' request."  Napier Decl. ¶ 23.  The additional search efforts undertaken to supplement this search and respond to the other requests at issue in this case are outlined below.

#### 2.    FBI Contacted Specific Offices to Identify Records not Contained in the "62 File"

RIDS also reached out to other FBI offices to conduct targeted searches for records that would be unlikely to appear in the 62 File.  First, Parts Three, Four, and Five of the 219 Request;[4] Part Three of the 665 Request; and the 217 Request seek data that "would

---

[4] These subparts are:

- A spreadsheet or similar data or document identifying the total number of FBI personnel who were ordered and/or tasked to work on processing Jeffrey Epstein files between March 17 and March 22. [Plaintiffs limited this request to "the number of FBI personnel who

be located within the time and attendance system" of FBI, rather than in the "62 File" or in FBI's central records retention system.  Napier Decl. ¶¶ 27–28.  These records, to the extent they existed, were most likely to be housed in FBI's Resource Planning Office ("RPO"), "which is responsible for managing financial assets and allocation."  *Id.*  As such, FBI reached out to the RPO to search for records potentially responsive to these requests for employment data.  *Id.*  Second, FBI contacted the Director's Office for information about the "comprehensive reports" referenced in  Attorney General Bondi's February 27 letter to identify records potentially responsive to that request.  *Id.* ¶ 28.

### 3. FBI Conducted a Supplemental Search of E-Mail Responsive to Plaintiffs' Request

Finally, and after its review of the 62 File, FBI determined that insofar as Plaintiffs requested communications among FBI officials, "such communications would reasonably be located within employees' unclassified and classified email accounts." Napier Decl. ¶ 29.  FBI conducted two separate e-mail searches to capture the complete potential universe of records responsive to the requests at issue here.  First, with respect to Parts One and Two of the 219 Request,[5] FBI searched for communications between the

---

worked on this matter, their titles, and the field offices/divisions they work in," and excluded "personal identifiable information."]
- The budget (if any such document exists) or a similar document identifying the total costs for FBI personnel to process Jeffrey Epstein files in response to any directive or order by FBI Director Kash Patel of his immediate aides and deputies.
- The number of hours FBI personnel worked between March 17 through March 21 to process Jeffrey Epstein files. If the hours each agent worked are captured in a document I request a copy of that as well.

Compl. ¶ 8.
[5] These subparts are:

- Any directive, memo, letter or email sent to RIDS Section Chief Michael Seidel, or Mr. Seidel's immediate deputies and aides, by FBI Director Kash Patel or his immediate deputy or aides between March 17 and the present that ordered RIDS personnel and personnel/agents from the

Director's Office and leadership of FBI's RIDS office between March 17, 2025 and April 1, 2025. *Id.* ¶ 34. Second, with respect to Parts One and Two of the 665 Request, FBI officials searched the e-mail accounts of three Senior Executive Service-level officials within the New York Field Office between March 17 and July 29, 2025. *Id.* ¶ 35. Both searches used broad search terms in an effort to identify potentially responsive documents for review. *Id.* ¶¶ 34-35. FBI reviewed the results of these searches and processed those documents actually responsive to Plaintiffs request. .

### B. OIP Conducted a Reasonable Search for Records Responsive to The 804 Request

The 804 Request seeks a specific document: "final talking points" relating to what Plaintiffs describe as "the Justice Department's 'final decision' on July 7 to refrain from releasing additional records related to the Jeffrey Epstein investigation, his 'client list' and his suicide in a New York jail as well as the release of the raw and enhanced video footage of the common area of the Special Housing Unit (SHU) where Epstein was housed at the time of his death." Based on the nature of Plaintiffs' request, OIP concluded that Plaintiffs were referring to the July 6, 2025 memorandum released by Defendants regarding, among other things, further releases of files related to Mr. Epstein's case. Decl. of Vanessa R. Brinkmann ¶9 ("Brinkmann Decl."). OIP issued a response indicating that it had identified a single responsive record which was being withheld in full. As detailed in Ms. Brinkmann's declaration, OIP coordinated outreach to the Office of the Attorney General ("OAG") and the Office of Public Affairs ("OPA") to conduct a tailored search

---

FBI's New York and Washington Field [Offices] to meet at FBI RIDS' offices in Virginia to process files/records of deceased billionaire Jeffrey Epstein.

- Any response Mr. Seidel or his immediate deputies and aides sent to FBI Director Kash Patel or Mr. Patel's immediate deputy or aides in response to the order to work on processing Jeffrey Epstein files.

Compl. ¶ 8.

for the document described in Plaintiffs' FOIA request. *Id.* ¶¶ 9–10. OIP coordinated outreach to three officials within OAG, who indicated that to the extent talking points were prepared, they would have been prepared by OPA. *Id.* ¶ 12. OPA would have been the logical location for a "talking points" document since its role is to assist the Attorney General in ensuring the public is informed about the Department's activities and priorities. *Id.* Discussions with OPA, in turn, identified "a one-page responsive document, consisting of final talking points sent by OPA to an OAG staff assistant." *Id.* ¶ 14. Upon identifying this document, the OAG staff assistant who originally received the document also "conducted a search of his emails to determine whether any additional final talking points were sent." *Id.* No further records were found. *Id.*

## II. Information in the Requested Records was Properly Withheld Under FOIA Exemptions 3, 5, 6, and 7

Defendants also move for summary judgment as to their decision to redact or withhold certain responsive documents pursuant to various FOIA exemptions. Under FOIA, federal agencies must make agency records available to the public upon request unless the records fall within one or more statutory exemptions. 5 U.S.C. § 552(a)(3), (b)(1)-(9). The statute reflects a "balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential," *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003), given the "'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (cleaned up). Although the Department bears the burden of justifying its withholding of material responsive to a FOIA request, "an agency's justification for invoking a FOIA exemption

8

is sufficient if it appears logical or plausible." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

### A. Information Exempted from Disclosure by Statute was Properly Withheld Pursuant to Exemption 3

Exemption 3 permits agencies to withhold information when disclosure is prohibited by another statute, if that statute either: (A) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue;" or (B) "establishes a particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i)–(ii). The statute "must, on its face, exempt matters from disclosure." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002).

In this case, FBI relied upon Exemption 3 to protect federal grand jury material pursuant to Federal Rule of Criminal Procedure 6(e). Napier Decl. ¶ 40. Criminal Rule 6(e) "counts as a statute for purposes of Exemption 3, as it has been positively enacted by Congress." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007). As Ms. Napier explains, the responsive records "contain information regarding an FBI document containing detailed information concerning the identity [of the person or persons] to whom [a federal grand jury] subpoena was issued." Napier Decl. ¶ 41.

FBI also invoked Exemption 3 as to "child victim interview statements which recount" crimes against minors "in graphic detail." Napier Decl. ¶ 42. That information protected by the Child Victims' and Child Witness' Rights Act, 18 U.S.C. § 3509. This statute prevents certain government actors from disclosing information or documents about minors involved in criminal proceedings. 18 U.S.C. § 3509(d). Like Criminal Rule 6(e), § 3509 is also recognized as a statute permitting withholding under FOIA Exemption 3. *Corley v. U.S. Dep't of Just.*, 998 F.3d 981, 982–83 (D.C. Cir. 2021).

### B. Information Subject to Litigation Privileges Was Properly Withheld Pursuant to Exemption 5

FBI also invoked Exemption 5 to protect information subject to various litigation privileges. 5 U.S.C. § 552(b)(5); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). These privileges include the deliberative process, attorney-client, and attorney work product privileges. *NADCL*, 844 F.3d at 249. The bases for these withholdings are explained in greater detail below.

### 1.  Deliberative Process Privileged Information Was Properly Withheld

The deliberative process privilege "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 19 (D.C. Cir. 2022) (quoting *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021). To come within the ambit of the privilege, the record must be both pre-decisional and deliberative. *U.S. Fish & Wildlife Serv. v. Sierra Club.*, 592 U.S. 261, 268 (2021).

FBI relied upon the deliberative process privilege "to protect internal deliberative communications and draft documents, to include emails and draft letters." Napier Decl. ¶ 47. Specifically, it "withheld draft copies of FBI letters detailing the inquiry response to AG Bondi's February 27, 2025 letter." *Id.* ¶ 49. Like all drafts, these materials "do[] not reflect final agency decisions," and there is "reasonably foreseeable harm" in the release of such materials in the form of "a chilling effect" on the willingness of agency employees to give candid opinions about their work, as Ms. Napier's declaration explains. *Id.*

OIP also properly withheld a document responsive to the 804 Request on the basis of the deliberative process privilege. As explained in Ms. Brinkmann's declaration, the "final talking points" document is deliberative because it "consist[s] of anticipated questions that may arise in future press interactions, suggested statements that the Attorney General may contemplate making (or that may inform her ultimate decision about what to say), and selected contextual information that is culled from a larger

universe of information (that itself reflects a deliberative process in suggesting what factual information might be relevant to the Attorney General's decisionmaking)." Brinkmann Decl. ¶ 20. It was "created to prepare [the Attorney General] about how she may later decide to interact with the press," and as such "does not embody the agency's final decision" with respect to public messaging. *Id.* 19. Release of such a document would chill the ability of Department leadership to deliberate freely about sensitive matters, which will foreseeably harm DOJ's operations. *Id.* ¶ 21.

### 2. Attorney-Client Privileged Information Was Properly Withheld

"The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey,* 158 F.3d 1263, 1267 (D.C. Cir. 1998); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (explaining that the attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law" and its "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.") (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). To invoke the attorney-client privilege, a party must demonstrate that the document it seeks to withhold: (1) involves "confidential communications between an attorney and his client"; and (2) relates to "a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. Internal Revenue Serv.*, 117 F. 3d 607, 618 (D.C. Cir. 1997).

Here, as detailed in Ms. Napier's declaration, FBI protected attorney-client privileged communications from being disclosed in these records. Napier Decl. ¶ 50. Although Defendants would obviously be harmed by the disclosure of confidential communications seeking advice on the requirements of privacy laws and court orders,

the attorney-client privilege is not a qualified privilege and does not depend upon an assessment of harm. *Id.* The withholdings are supported by the relevant declarations and should be upheld.

### 3. Attorney Work Product Information was Properly Withheld

The attorney work product doctrine holds that "materials prepared by one's attorney in anticipation of litigation are generally privileged from discovery by one's adversary." *Nat'l Ass'n of Crim. Def. Laws. v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 250 (D.C. Cir. 2016); *see also Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").

Here, FBI is asserting the attorney work product doctrine "to protect materials created by DOJ and/or FBI attorneys," or at their direction, "as part of a DOJ investigation into allegations of misconduct" detailed in the letter sent by the Attorney General to the Director of the FBI in February. Napier Decl. ¶¶ 53-55. The review of materials taking place in response to the Attorney General's letter thus "were part of an investigation into possible personnel misconduct" and "readily satisfy the elements" of the work product doctrine "because they were created at the direction of an attorney involved in the potential investigation into FBI misconduct." *Id.*

### C. The Records at Issue in This Case Qualify for Exemption 7

FOIA Exemption 7 "permits the withholding of records or information compiled for law enforcement purposes . . . to the extent one or more listed risks are present." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007) (quotations omitted). In order for this exemption to apply, the government must as a threshold matter demonstrate that the records "were compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "[T]he term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Pub. Empls. for Env't Resp. v. U.S.*

*Section, Int'l Boundary and Water Comm'n*, 740 F.3d 195, 203 (D.C. Cir. 2014).  "Because the DOJ is an agency special[izing] in law enforcement, its claim of a law enforcement purpose is entitled to deference."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.*, 331 F.3d 918, 926 (D.D.C. 2003) (citation omitted).

Here, FBI is, by law, "the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency."  Napier Decl. ¶ 55.  FBI's investigation of "alleged FBI non-compliance related to a request from [the Attorney General] for the production of the entire scope of files related to the investigation of Jeffrey Epstein," as well as the development of "training to ensure efficient and effective processing of the Epstein documents at issue here," are valid "law enforcement purpose[s]."  *Id.*  That determination is entitled to deference by law and permits Defendants to rely on Exemption 7 in this case.

### D.    Information That Would Interfere with Pending Law Enforcement Investigations Was Properly Withheld Under Exemption 7(A)

Exemption 7(A) protects information that, if released, "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  To establish the applicability of Exemption 7(A), an agency must make a two-prong showing.  First, as with all of Exemption 7's subdivisions, the agency must demonstrate that the records were "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  Second, an agency must "demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'"  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014).

Here, FBI invoked Exemption 7(A) "in a limited fashion to protect information originated and serialized in the underlying criminal investigative file of Jeffrey Epstein" in light of ongoing legal proceedings involving Ghislaine Maxwell, an associate of Mr.

13

Epstein's.  Napier Decl. ¶ 57.  Although Ms. Maxwell's direct appeal rights have been exhausted, her lawyer has stated that she intends to seek habeas relief under 18 U.S.C. § 2255.  *Id.; see also, e.g., United States v. Maxwell*, 20 Cr. 330, ECF No. 803 (submission by Maxwell stating that "[s]he is preparing a habeas petition").  "[L]ogic suggests that the existence of a pending motion under [28 U.S.C.] § 2255 makes it reasonably foreseeable that an enforcement proceeding (*i.e.*, a new trial) might take place, leading to the expectation that Exemption 7(A) may apply to protect materials whose release could reasonably be expected to interfere with that new trial."  *Johnson v. FBI*, 118 F. Supp. 3d 784, 792 (E.D. Pa. 2015).

### E.    Personal Information Was Properly Withheld Pursuant to Exemption 6 and 7(C) Because Disclosure Would Constitute an Unwarranted Invasion of Privacy

Courts recognize that non-public files from criminal investigations implicate substantial privacy interests, especially when the investigation does not result in criminal charges.  *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (explaining that portions of records in investigatory files that would reveal subjects, witnesses, and informants in law enforcement investigations are categorically exempt (citing *SafeCard Servs. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991))).  Likewise, courts hold that the countervailing "public interest" cognizable under FOIA must relate to government conduct and does not encompass public scrutiny of private individuals.  *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) ((public interest prong focuses on "Government's conduct of its obligation"); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) ("The Supreme Court has read Exemption 6 broadly ….").  Here, the release of the redacted portions of the transcripts would harm substantial privacy interests that are not outweighed by any cognizable public interest.  The Department thus properly withheld the transcripts in part under Exemptions 6 and 7(C).

Exemption 6 allows an agency to withhold information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). For the exemption to apply, the information at issue must be maintained in a government file and apply to a particular individual. *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Once that threshold requirement is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure. *See U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

Similarly, when records have been compiled for law enforcement purposes (such as is the case here), Exemption 7(C) exempts from disclosure "records or information. . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). For Exemption 7(C) to apply, the records at issue must have been compiled for law enforcement purposes. *Schoenman v. FBI*, 575 F. Supp. 2d 166, 174 (D.D.C. 2008). If that threshold requirement is met, Exemption 7(C), like Exemption 6, requires individual privacy rights to be balanced against the public interest in disclosure. *See, e.g.*, *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

In the balancing process, however, courts have consistently held that Exemption 7(C) "is more protective of privacy than Exemption 6." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994); *see Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165–66 (2004) (contrasting Exemption 6 as one that "refers to disclosures that 'would constitute' an invasion of privacy," from Exemption 7(C), which "encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." (citations omitted)). Accordingly, "[w]hen an agency invokes both exemptions, courts 'focus' on Exemption 7(C) because it 'establishes a lower bar for withholding material.'" *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) (quoting *Citizens for Responsibility & Ethics in Wash.*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).

15

As explained in Ms. Napier's declaration, FBI withheld many categories of personal information subject to Exemption 6 and Exemption 7(C).  First, FBI withheld the "names and identifying information of FBI Special Agents . . . and professional staff." Napier Decl. ¶¶ 62–64.  Second, FBI withheld "the names and identifying information of third parties" who were "tangentially mentioned in conjunction with FBI investigative efforts" and "were not of investigative interest to the FBI."  *Id.* ¶ 66.  Third, FBI withheld the names of certain individuals who were of investigative interest to FBI but for whom FBI "concluded there was no public interest . . . sufficient to override these individuals' substantial privacy interests."  *Id.* ¶ 66.  Finally, FBI redacted identifying information of "third-party victims" of crime, for whom the release of identity "would cause embarrassment, as well as unsolicited and unnecessary attention to be focused" on them "in excess of the harms they've already been forced to endure."  *Id.* ¶ 68.  OIP has also claimed Exemption 6 over the identifying information of one employee and the contact information for two employees.  Brinkmann Decl. ¶ 26.  These explanations easily satisfy the legal standard for withholding under Exemptions 6 and 7(C).

### F.    Confidential Source Information Was Properly Withheld Pursuant to Exemption 7(D)

Exemption 7(D) protects records that, if disclosed in whole or in part, would "be expected to disclose the identity of a confidential source . . . which furnished information on a confidential basis," as well as "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).  "A source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances which such assurances could be reasonably inferred.'"  *See Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 170–74 (1993)).  Exemption 7(D)'s protection of confidential sources and information provided by such sources applies regardless of whether the investigation is open or closed.  *Ortiz v. U.S. Dep't of Health & Human Servs.*, 70 F.3d 729, 733 (2d Cir. 1995).  FBI relies on

confidential sources "on a regular basis," and experience counsels that "sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public." Napier Decl. ¶ 70. Once the identity of a confidential source is disclosed, that source is lost forever, and the disclosure may also inhibit other potential sources from coming forward. *Id.* ¶ 71.

In this case, FBI protected the names, identifying information of, and information provided by third parties to FBI under express grants of confidentiality. *See Id.* ¶¶ 72-74. As the law of this Circuit makes clear, the identity of witnesses who receive express assurances of confidentiality may be withheld pursuant to Exemption 7(D). *Williams*, 69 F.3d at 1159. FBI has therefore sufficiently justified its withholdings under Exemption 7(D).

### G.    Information About Law Enforcement Methods and Techniques Was Properly Withheld Pursuant to Exemption 7(E)

FBI also relied upon Exemption 7(E) to protect "non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public." Napier Decl. ¶ 77. "[R]ecords or information compiled for law enforcement purposes" are protected from disclosure pursuant to Exemption 7(E) when releasing them "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7), (b)(7)(E); *see also Muslim Advocates v. U.S. Dep't of Just.*, 833 F. Supp. 2d 92, 104–05 (D.D.C. 2011) ("Although some information regarding the FBI's use of the particular techniques and procedures discussed . . . may be known," agencies are not required "'to release all details concerning [their] techniques simply because some aspects of them are known to the public[.]'" (alteration in original) (quoting *Barnard v.*

*U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009))).  FBI has used Exemption 7(E) to protect several categories of information found within this release.

First, it redacted "internal e-mail addresses, non-public web addresses, computer banner lines and non-public telephone numbers of FBI personnel," which could be harvested for use in cyber-attacks.  Napier Decl. ¶ 78.

Second, FBI protected "the identities of sensitive investigative databases and database search results located through queries of these non-public databases used for official law enforcement purposes."  *Id.* ¶ 79.  Disclosing such information would, as Ms. Napier explains in further detail in her declaration, "reveal the utility to FBI investigators and the scope of information stored within the databases," "the types of information stored in these databases," and "where the FBI is storing and obtaining valuable investigative data."  *Id.* ¶¶ 80–83.

Third, "the FBI protected a description of evidence that was analyzed by the Computer Analysis Response Team," which "provides digital forensics, technical capabilities, and related services and support to the FBI."  Napier Decl. ¶ 84.  The information withheld "includes a detailed description of the specific evidentiary item analyzed," how it was analyzed, and a summary of "the report that resulted from that analysis."  *Id.*  Disclosure of this information "would impede the FBI's effectiveness in investigating crimes" involving digital evidence, and "would aid in circumvention of the law by providing criminals the information necessary for them to adjust behavior to avoid detection.  *Id.* at ¶ 85.

Fourth, FBI withheld certain investigative techniques and procedures relevant to their confidential informant program.  Confidential sources are "assigned permanent source symbol numbers, in order to further protect their identities within FBI communications."  *Id.* at ¶ 87.  FBI "withheld specific non-public details describing the format of older and current [confidential human source] numbers, and withheld the examples provided in the processing guidance of the various types of symbol source

numbers," because "criminals could also use this knowledge to determine what type of source the FBI is utilizing in various investigations and locations, based on the format of the symbol number." *Id.* ¶ 88. Release of the numbers may also permit criminals to "adjust their behaviors to avoid detection" and "weed out sources in their midst." *Id.*

Finally, FBI "withheld a chart identifying the specific allocation of resources applied to specific aspects of the transparency project," including "the employees' positions within specific divisions of the FBI," the "number of employees of that position and division assigned," the "number of premium pay hours worked by the employees," and the "premium pay expenses applied." *Id.* ¶ 89. The concern with releasing such information is that, in the future, "a potential criminal actor could devise activities designed to mirror similar needs in the future in an effort to tailor their activities or coordinate with other actors to target components with lower response capabilities, funding levels, and/or fewer resources in order to circumvent the law." *Id.*

## III.  Disclosure of Redacted or Withheld Material Would Foreseeably Harm Interests Protected by FOIA Exemptions

Under the FOIA Improvement Act of 2016, to justify the withholding of a responsive record, the government must show that "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b) [of FOIA]," or that "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i); *see also Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021). As described by the D.C. Circuit, to satisfy the foreseeable harm requirement, the agency must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm.*, 3 F.4th at 369.

That standard has been met here. Ms. Napier's declaration explains the foreseeable harm associated with release of each of the sixteen different categories of exempt information found in the records at issue in this case. Napier Decl. ¶ 92.

Likewise, Ms. Brinkmann's declaration discusses the foreseeable harm of releasing suggested talking points.  Brinkmann Decl. ¶ 21.  Defendants have amply demonstrated the requisite foreseeable harm.

## IV.    There Is No Further Segregable, Non-Exempt Information To Release

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Both DOJ and FBI considered to what extent information found in documents subject to FOIA exemptions could be released with redactions instead of being withheld in full, and as a result, FBI released 59 pages of records to Plaintiffs on Monday, November 24.  Napier Decl. ¶ 93; Brinkmann Decl. ¶ 22.

Accordingly, all information has been appropriately considered for disclosure and no further segregation is possible.  *See, e.g.*, *NADCL*, 844 F.3d at 256  (noting that when an exemption applies to an entire record, "there are no non-exempt portions left to segregate").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment.

[SIGNATURE BLOCK ON NEXT PAGE]

Date: November 24, 2025                    Respectfully submitted,


                                          _/s/ Stanley E. Woodward Jr._____
                                          STANLEY E. WOODWARD, JR.
                                          (DC Bar No. 997320)
                                          *Associate Attorney General*
                                          U.S. Department of Justice
                                          950 Pennsylvania Avenue NW
                                          Washington, DC 20530

                                          ELIZABETH J. SHAPIRO
                                          *Deputy Branch Director*
                                          MICHAEL J. GERARDI
                                          (DC Bar No. 1017949)
                                          *Senior Trial Counsel*
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L Street NW
                                          Washington DC 20005
                                          Email: michael.j.gerardi@usdoj.gov
                                          Phone: (202) 616-0680

## CERTIFICATE OF SERVICE

On November 24, 2025, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.


*/s/ Stanley E. Woodward Jr.*
STANLEY E. WOODWARD, JR.