IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD & BLOOMBERG L.P., | |
| *Plaintiffs,* | |
| V. | CIVIL ACTION NO. 25-CV-2848 (RCL) |
| U.S. DEPARTMENT OF JUSTICE & FEDERAL BUREAU OF INVESTIGATION, | |
| *Defendants.* | |

**DECLARATION OF AMIE MARIE NAPIER**

I, Amie Marie Napier, declare as follows:

1.      I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division, Federal Bureau of Investigation ("FBI"), located in Winchester, Virginia. I joined the FBI in April 2009, and prior to my current position, I was the Unit Chief of the Office of Internal Auditing's National Security Unit from July 2024 until September 2025; a Unit Chief, Acting Assistant Section Chief, and Acting Section Chief in the Information Technology Infrastructure Division from February 2020 to July 2024; an Auditor, Unit Chief, Assistant Section Chief, and Acting Section Chief in the Training Division from July 2012 to February 2020; an Auditor and Division Compliance Officer in the Security Division from September 2010 to July 2012; and an Auditor and Compliance Team Lead in the Threat Screening Center from April 2009 to September 2010. Prior to joining the FBI, I served as an Auditor with the Department of Defense's Office of Inspector General from September 2003 to April 2009.

1

2.      In my official capacity as Section Chief of RIDS, I supervise approximately 210 FBI employees, supported by approximately 95 contractors, who staff a total of eight Federal Bureau of Investigation Headquarters ("FBIHQ") units and two field operational service center units. RIDS' collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.      Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiffs' FOIA requests that are the subjects of this litigation.

4.      The FBI submits this declaration in support of Defendants' Motion for Summary Judgment. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiffs' requests. Part II describes the procedures used to search for responsive records. Part III, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), provides the FBI's justification for withholding information in full or part pursuant to FOIA Exemptions 3, 5, 6, 7(A),7(C), 7(D), and 7(E). 5 U.S.C. § 552(b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

## PART I: ADMINISTRATIVE HISTORY OF PLAINTIFFS' REQUESTS

5.      Plaintiff, on behalf of himself and Bloomberg News, submitted four multi-part

requests for records related to various aspects of the FBI's review and processing of records

concerning Jeffrey Epstein. Each request was assigned a separate FOIA number, as identified in

the chart and exhibits below.

| Request Date | FOIA Request Number Assigned | Exhibit |
|---|---|---|
| March 21, 2025 | 1664219-000 | A |
| March 25, 2025 | 1664215-000 | B |
| March 26, 2025 | 1664217-000 | C |
| July 21, 2025 | 1675665-000 | D |

*FBI FOIA REQUEST NUMBER 1664219-000*

6.      By electronic FOIA ("eFOIPA")[1] dated March 21,2025, Plaintiff Jason Leopold,

on behalf of himself and Bloomberg News, submitted a FOIA request to the FBI seeking the

following six categories of records:

1. Any directive, memo, letter or email sent to RIDS Section Chief Michael Seidel, or Mr. Seidel's immediate deputies and aides, by FBI Director Kash Patel or his immediate deputy or aides between March 17 and the present that ordered RIDS personnel and personnel/agents from the FBI's New York and Washington Field to meet at FBI RIDS' offices in Virginia to process files/records of deceased billionaire Jeffrey Epstein.

2. Any response Mr. Seidel or his immediate deputies and aides sent to FBI Director Kash Patel or Mr. Patel's immediate deputy or aides in response to the order to work on processing Jeffrey Epstein files.

3. A spreadsheet or similar data or document identifying the total number of FBI personnel who were ordered and/or tasked to work on processing Jeffrey Epstein files between March 17 and March 22. PLEASE NOTE: I am not interested in personal identifiable information. I am only interested in the number of FBI personnel who worked on this matter, their titles, and the field offices/divisions they work in.

---

[1] An eFOIPA is an electronic means by which requesters can submit FOIA or Privacy Act requests to the FBI, online, through the FBI's public website, www.FBI.gov.

4.  The budget (if any such document exists) or a similar document identifying the total costs for FBI personnel to process Jeffrey Epstein files in response to any directive or order by FBI Director Kash Patel or his immediate aides and deputies.

5.  The number of hours FBI personnel worked between March 17 through March 21 to process Jeffrey Epstein files. If the hours each agent worked are captured in a document, I request a copy of that as well.

6.  Any documented instruction or direction provided to FBI personnel on what type of research they were asked to conduct while processing Jeffrey Epstein files.

Plaintiffs' requested a fee waiver and for the purpose of determining fees, to be categorized as a member of the news media. Plaintiffs' also requested expedited processing of the request.

7.      By letter dated April 9, 2025, the FBI acknowledged receipt of Plaintiffs' FOIA request dated March 21, 2025, and notified Plaintiffs that it had assigned FBI FOIA Request Number 1664219-000 to his request. The FBI also informed Plaintiffs of the following: they submitted the request via the FBI's eFOIPA system, the FBI determined it was compliant with the eFOIPA terms of service, and future correspondence about the request would be provided electronically; Plaintiffs' request for a public interest fee waiver was under consideration, and they would be advised of the decision at a later date, and if their fee waiver was not granted, they would be responsible for applicable fees; and that for the purpose of assessing any fees, the FBI determined that as a representative of the news media, they would be charged applicable duplication fees. Additionally, the FBI informed Plaintiffs they could check the status of the request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, the FBI advised that if dissatisfied with the FBI's determinations, they could appeal the FBI's response to the DOJ, Office of Information Policy ("OIP") within 90 days of its letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS").

8.      In a second letter, also dated April 9, 2025, the FBI informed Plaintiffs that "unusual circumstances" applied to his request. See 5 U.S.C. § 552(a)(6)(B)(iii). The FBI's letter advised that these unusual circumstances would delay the FBI's ability to make a determination on his request within 20 days. The FBI advised Plaintiffs that if dissatisfied with the FBI's determination, they could file an appeal in writing to OIP within 90 days from the date of the letter or seek dispute resolution services by contacting OGIS.

9.      By letter dated April 10, 2025, the FBI acknowledged Plaintiffs' request for expedited processing pursuant to 28 C.F.R. §16.5 (e)(1)(ii); informed them they did not provide enough information to meet the statutory requirements for expedition; and that as a result, the FBI was denying their request for expedited processing. The FBI advised Plaintiffs that if they were dissatisfied with the FBI's determination concerning expedited processing, they could submit an administrative appeal in writing to OIP, seek dispute resolution services through the FBI's FOIA Public Liaison, or they could contact OGIS. (Ex. A.).

*FBI FOIA REQUEST NUMBER 1664215-000*

10.     By eFOIPA dated March 25, 2025, Plaintiffs, on behalf of himself and Bloomberg News, submitted another FOIA request to the FBI seeking a copy of the processing guidelines, guidance or slide decks provided to FBI employees who are tasked with reviewing and processing Jeffrey Epstein files for public release. Plaintiffs asked the FBI to limit the search to the following timeframe: March 18, 2025, through the date the search for responsive records was to be conducted. Plaintiffs also requested a fee waiver, and for the purpose of determining fees, they requested to be categorized as a member of the news media. Further, Plaintiffs requested expedited processing of the request.

11.    By letter dated April 2, 2025, the FBI acknowledged receipt of Plaintiffs' FOIA request dated March 25, 2025, and notified him that it had assigned FBI FOIA Request Number 1664215-000 to the request. The FBI also informed Plaintiffs of the following: they submitted their request via the FBI's eFOIPA system, the FBI determined it was compliant with the eFOIPA terms of service, and future correspondence about the request would be provided electronically; their request for a public interest fee waiver was under consideration, they would be advised of the decision at a later date, and if their fee waiver was not granted, they would be responsible for applicable fees; and for the purpose of assessing any fees, the FBI determined as a representative of the news media, they would be charged applicable duplication fees. Additionally, the FBI informed Plaintiffs they could check the status of their request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, if they were dissatisfied with the FBI's response, they could appeal the FBI's response to OIP within 90 days of the FBI's letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting OGIS.

12.    By letter dated April 2, 2025, the FBI informed Plaintiffs' that "unusual circumstances" applied to his FOIA request. *See* 5 U.S.C. § 552(a)(6)(B)(iii). The FBI's letter advised that these unusual circumstances would delay the FBI's ability to make a determination on the request within 20 days. The FBI advised Plaintiffs' that if they were dissatisfied with the FBI's response, they could file an appeal in writing to OIP within 90 days from the date of the letter and/or seek dispute resolution services by contacting OGIS.

13.    By letter dated April 10, 2025, the FBI acknowledged Plaintiffs' request for expedited processing pursuant to 28 C.F.R. §16.5 (e)(1)(ii); informed them that they did not provide enough information to meet the statutory requirements for expedition; and that, as a result, the FBI was denying their request for expedited processing. The FBI advised Plaintiffs

that if they were dissatisfied with the FBI's determination concerning expedited processing, he could submit an administrative appeal in writing to OIP, seek dispute resolution services through the FBI's FOIA Public Liaison, or could contact OGIS. (Ex. B.).

*FBI FOIA REQUEST NUMBER 1664217-000*

14.    By eFOIPA dated March 26, 2025, Plaintiff Leopold, on behalf of himself and Bloomberg News, submitted a FOIA request to the FBI seeking a copy of the "comprehensive report" based on the investigation FBI Director Kash Patel was directed to conduct by Attorney General Pam Bondi on February 27 and "proposed personnel actions" related to what AG Bondi said was the FBI's failure to turn over to her the complete set of documents on deceased banker and convicted sex offender Jeffrey Epstein." Plaintiff further stated in their request that "AG Bondi told FBI Director Patel to deliver this report and the proposed personnel actions to her within 14 days" and that the "deadline had since passed." Plaintiffs requested a fee waiver and to be categorized as a member of the news media for the purpose of determining fees. Plaintiffs also requested expedited processing of the request.

15.    By letter dated April 2, 2025, the FBI acknowledged receipt of Plaintiffs' FOIA request dated March 26, 2025, and notified him the FBI had assigned it FBI FOIA Request Number 1664217-000. The FBI also informed Plaintiffs of the following: they submitted their request via the FBI's eFOIPA system, the FBI determined it was compliant with the eFOIPA terms of service, and future correspondence about the request would be provided electronically; his request for a public interest fee waiver was under consideration, and he would be advised of the decision at a later date, and if Plaintiffs' fee waiver was not granted, Plaintiffs would be responsible for applicable fees; and that for the purpose of assessing any fees, the FBI determined as a representative of the news media, he would be charged applicable duplication

fees. Additionally, the FBI informed Plaintiff he could check the status of the request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, the FBI advised Plaintiffs that if they were dissatisfied with the FBI's determination, they could appeal the FBI's response to OIP within 90 days of the FBI's letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting OGIS

16.    By letter dated April 2, 2025, the FBI informed Plaintiffs that "unusual circumstances" applied to his FOIA request. See 5 U.S.C. § 552(a)(6)(B)(iii). The FBI's letter advised that these unusual circumstances would delay the FBI's ability to make a determination on the request within 20 days. The FBI advised Plaintiffs that if they were dissatisfied with the FBI's response, they could file an appeal in writing to OIP within 90 days of the date of the FBI's letter and/or seek dispute resolution services by contacting OGIS.

17.    By letter dated April 10, 2025, the FBI acknowledged Plaintiffs' request for expedited processing pursuant to 28 C.F.R. §16.5 (e)(1)(ii) and informed him that he did not provide enough information to meet the statutory requirements for expedition. The FBI advised that it was denying his request for expedited processing and if he was dissatisfied with the FBI's determination concerning expedited processing, he could submit an administrative appeal in writing to OIP, seek dispute resolution services through the FBI's FOIA Public Liaison, and/or contact OGIS. (Ex. C.).

*FBI FOIA REQUEST NUMBER 1675665-000*

18.    By eFOIPA dated July 21, 2025, Plaintiff, on behalf of himself and Bloomberg News, submitted a FOIA request to the FBI seeking the following three categories of records:

1. All communications to/from the FBI's NY Field Office senior executives from FBIHQ and/or the Department of Justice containing instruction, direction, or

discussion about the conduct of research they were asked/directed to conduct related to Jeffrey Epstein files.[2]

2.  Any communications between NYFO personnel relating to the guidance/direction they received from DOJ and FBIHQ about the searches of Jeffrey Epstein material.

3.  Any and all documents related to overtime hours worked by RIDS FOIA units from January 20, 2025, through the present. For clarification, I am not seeking individual timecards but instead broader statistics and analytics data reflecting hours worked.

Plaintiffs' requested a fee waiver and to be categorized as a member of the news media for the

purpose of determining fees. Plaintiffs' also requested expedited processing of the request.

19.    By letter dated July 30, 2025, the FBI acknowledged receipt of Plaintiffs' FOIA

request dated July 21, 2025, and notified him that it had assigned it FBI FOIA Request Number

1675665-000. The FBI also informed Plaintiff of the following: he submitted his request via the

FBI's eFOIPA system, the FBI determined it was compliant with the eFOIPA terms of service,

and future correspondence about the request would be provided electronically; his  request for a

public interest fee waiver was under consideration, he would be advised of the decision at a later

date, and if Plaintiffs' fee waiver was not granted, he would be responsible for applicable fees;

and for the purpose of assessing any fees, the FBI determined as a representative of the news

media, he would be charged applicable duplication fees. Additionally, the FBI informed Plaintiffs

that they could check the status of the request and/or contact the FBI with any questions at

www.fbi.gov/foia. Furthermore, the FBI advised Plaintiffs that they could appeal the FBI's

response to the OIP) within 90 days of the FBI's letter, contact the FBI's public liaison, and/or

seek dispute resolution services by contacting OGIS.

---

[2] Plaintiff clarified on November 4, 2025, that by "conduct of research" he meant "what parameters, guidance or instructions were provided governing the way in which personnel performed a search through Epstein files, searched for Epstein files, and any independent background research they conducted that informed their search for Epstein related records."

20.     By a second letter dated July 30, 2025, the FBI informed Plaintiffs that "unusual circumstances" applied to his FOIA request. See 5 U.S.C. § 552(a)(6)(B)(iii). The FBI's letter advised that these unusual circumstances would delay the FBI's ability to make a determination on the request within 20 days. The FBI advised Plaintiffs that if he was dissatisfied with the FBI's response, he could file an appeal in writing to OIP within 90 days from the date of the letter and/or seek dispute resolution services by contacting OGIS.

21.     By letter dated August 11, 2025, the FBI acknowledged Plaintiffs' request for expedited processing pursuant to 28 C.F.R. §16.5 (e)(1)(ii) and informed him that he had provided enough information to meet the statutory requirements for expedition. The FBI advised it was granting Plaintiff's request for expedited processing. The FBI also advised Plaintiffs that if he was dissatisfied with the FBI's determination concerning expedited processing, he could submit an administrative appeal in writing to OIP, seek dispute resolution services through the FBI's FOIA Public Liaison, or he could contact OGIS. (Ex. D).

LITIGATION

22.     On August 25, 2025, Plaintiff and Bloomberg News filed a complaint in the U.S. District Court for the District of Columbia. (ECF No. 1).

23.     On October 14, 2025, the court ordered Defendants to produce a *Vaughn* index and a supporting dispositive motion within 30 days. _See_ ECF No. 14. On October 15, 2025, the court clarified that Defendants must file a *Vaughn* index with a supporting motion "either ten days after the end of the lapse in appropriations or 30 days from the October 14, 2025, order— whichever comes later." _See_ ECF No. 17. The FBI reasonably focused its search on FBI file number 62F-HQ-A4051823 ("62 File"). This administrative file was created and maintained for the purpose of compiling records relevant to the subject matter of Plaintiffs' request, and in

10

compliance with the Attorney General's February 27, 2025, letter.[3] Accordingly, Plaintiffs' requests were interpreted as written, rather than extrapolating or considering broader alternatives that could have resulted in searches outside of the 62 File, or an unduly burdensome result. Based on this interpretation, the FBI has searched all locations and files reasonably likely to contain responsive records, and there are no bases for the FBI to conclude that additional searches would reasonably be likely to locate responsive records under the FOIA. By letter dated November 24, 2025, the FBI made a release of records to Plaintiffs, advising that 220 pages of records and 1 video file consisting of thirty-two minutes and eleven seconds were identified as responsive to the requests, and 61 pages of records were being released in full or part, with certain information exempted pursuant to FOIA Exemptions 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. § 552 (b)3, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Additionally, the FBI advised Plaintiffs that they could appeal the FBI's response to the DOJ, OIP, within 90 days of the date of its letter, contact the FBI's public liaison, or seek dispute resolution services by contacting OGIS. (Ex. E.).

## PART II: THE FBI'S SEARCH FOR RESPONSIVE RECORDS

24.    In response to FOIA requests received by the FBI, the FBI often conducts a search of the Central Records System ("CRS") to determine if the FBI has records about a particular subject. The CRS is where the FBI indexes information about individuals, organizations, events, or other subjects of investigative interest for future retrieval. Searches of the CRS are conducted through Sentinel's search functions and do not actually produce the responsive records; rather, these searches provide the file numbers associated with indexed terms so that an Initial

---

[3] *See* Letter from Attorney General Pamela Bondi to FBI Director Kash Patel (Feb. 27, 2025), at https://www.justice.gov/ag/media/1391331/dl?inline.

Processing Unit ("IPOU") analyst may then gather the potentially responsive files from their holding locations to confirm responsiveness and if responsive, import into the FBI's FOIA Document Processing System ("FDPS") for future FOIA processing by a disclosure analyst.

SEARCH FOR RECORDS RESPONSIVE TO FOIA REQUEST NUMBER 1664215-000

25.    Based on internal discussions with DOJ and FBI personnel familiar with the project, including the purposes of the investigation ordered by Attorney General Pamela Bondi, the FBI reviewed each of the requests made by Plaintiff and determined that the majority of information responsive to these requests would be located within the 62 File. The search of this file is described below in detail, pertaining to each specific request. Given the specific nature of Plaintiff's request, wherein the responsive file was already identified, a search of the CRS to locate the responsive file number was unnecessary. RIDS instead gathered, reviewed, and processed the records contained in the already identified file.[4]

TARGETED SEARCH FOR RECORDS RESPONSIVE TO
PORTIONS OF FOIA REQUEST NUMBERS 1675665-000 AND 1664219-000

26.    The FBI determined the records responsive to parts of Plaintiff's FOIA request numbers 1675665-000 and 1664219-000 regarding FBI personnel hours worked to include overtime hours during the Epstein project would be located within the time and attendance system, rather than through a search of the CRS. The FBI determined that the Resource Planning

---

[4] FBI's Records and Information Management Policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. FBI personnel are responsible for managing records they create and receive, determining the record status for each, and importing records into an electronic recordkeeping system such as the Sentinel case management system. *See* FBI Records and Information Management Policy Guide, 1321PG (May 31, 2024) at 11-12 (Section 2.9), available at www.vault.fbi.gov/records -and-information-management-policy- guide-1321pg/Records%20and%20Information%20Management%20Policy%20Guide%201321PG%20Part%2001%28Final%29/view (last accessed November 10, 2025).

Office ("RPO"), which is responsible for managing financial assets and allocation, was the location reasonably likely to possess the responsive records. Therefore, RIDS contacted the RPO to provide the data reports responsive to Plaintiffs' requests.

TARGETED SEARCH FOR RECORDS RESPONSIVE TO PORTIONS OF
FOIA REQUESTS 1664219-000, 1664217-000 AND 1675665-000

27.     Based on the reasonable interpretation of Plaintiff's request, the FBI determined the records responsive to parts of Plaintiff's FOIA request numbers 1664219-000 and 1675665-000, regarding FBI personnel hours worked, to include overtime hours during the Epstein project, would be located within the time and attendance system, rather than through a search of the CRS. The FBI determined that RPO, which is responsible for managing financial assets and allocation, was the location reasonably likely to possess any responsive records. Therefore, RIDS contacted RPO to request the data reports responsive to Plaintiffs' requests.

28.     Plaintiffs' FOIA request 1664217-000 sought a copy of the "comprehensive report" related to Attorney General Bondi's February 27, 2025, letter. The FBI determined that if such a report existed, it would reasonably be located within the Director's Office. Therefore, RIDS contacted the Director's Office to request any comprehensive reports responsive to Plaintiffs' request.

29.     Plaintiffs' FOIA request 1664219-000 sought communications between RIDS' Section Chief Michael Seidel or Mr. Seidel's immediate deputies and aides, by FBI Director Kash Patel or his immediate deputy or aides directing FBI personnel to process records related to Jeffery Epstein. Upon review of the 62 File, the FBI determined that such communications would reasonably be located within employees' unclassified and classified email accounts.

13

*The Nature of FBI Email Records*

30.    FBI email communications are stored within the individual email accounts of FBI employees. These accounts include all emails sent to or from each employee. Typically, FBI employees have an unclassified email account ("UNet"). FBI employees also have a classified account ("FBINet") to communicate up to the "SECRET" classification level. Due to this structure, and based upon the parameters of the request, the FBI must first identify likely custodians of responsive records, and whether communications are likely to be stored within their unclassified and/or classified accounts.

31.    Once likely custodians and their respective classified or unclassified accounts are identified, the FBI then develops appropriately tailored search terms that are reasonably calculated to locate the requested records within individual accounts. Searches often employ Boolean search operators and other limiters to construct and direct appropriately scoped searches of email records. This combination of terms, Boolean search operators, and other limiters allows the FBI to conduct email searches that are likely to locate responsive records.

*The FBI's Search for Email Records Responsive to FOIAs 1664219-000 and 1675665-000*

32.    To locate email records responsive to Plaintiffs' requests, the FBI searched the unclassified and classified email accounts of specific custodians it deemed likely to have responsive email communications.

33.    In response to FOIA 1664219-000, the FBI identified the following custodians deemed reasonably likely to have been recipients or originators of responsive email communications: RIDS' Section Chief Mike Seidel, RIDS' Assistant Section Chief Chrissy Driver, RIDS' Assistant Section Chief Shannon Hammer, FBI Director Kash Patel, Deputy Director Dan Bongino, Associate Deputy Director William Rivers, Deputy Assistant Director Ryeshia Holley, General Counsel Samuel Ramer, and Acting Branch Director Shannon Parry.

14

| Custodian | Job Title | Role as it relates to requested documents |
|-----------|-----------|-------------------------------------------|
| Mike Seidel | RIDS' Section Chief | RIDS' Section Chief |
| Chrissy Driver | RIDS' Assistant Section Chief | RIDS' Section Chief's Deputy/Aide |
| Shannon Hammer | RIDS' Assistant Section Chief | RIDS' Section Chief's Deputy/Aide |
| Kash Patel | FBI Director | FBI Director |
| Dan Bongino | Deputy Director | FBI Director's Deputy/Aide |
| William Rivers | Associate Deputy Director | FBI Director's Deputy/Aide |
| Ryeshia Holley | Deputy Assistant Director | FBI Director's Deputy/Aide |
| Samuel Ramer | General Counsel | FBI Director's Deputy/Aide |
| Shannon Parry | Acting Branch Director | FBI Director's Deputy/Aide |

The FBI searched within each of the classified and unclassified accounts of the possible custodians identified above for communications created or received between March 17, 2025, and April 1, 2025, containing the search term "Epstein," or "Special," or "Project," or "AG." This search was intended to capture a broad set of preliminary potentially responsive records. The FBI then reviewed all documents identified in the above-described broad language search to identify and process only those documents that are responsive to the language provided in Plaintiffs' requests. The FBI determined that the results of these searches would likely identify any responsive communications within the email accounts of these FBI officials.

34.     In response to FOIA 1675665-000, the FBI deemed Acting Special Agent in Charge Spencer Horn, Acting Assistant Director in Charge Leslie Backschies, and Assistant Director in Charge Christopher Raia to be custodians reasonably likely to have been recipients or originators of responsive email records. because these custodians held positions at the Senior Executive Service ("SES") level within the New York Field Office, had been officially acknowledged by the FBI as an FBI employee in the context of the records at issue, and/or held a public-facing position.

| Custodian | Job Title | Role as it relates to requested documents |
|---|---|---|
| Spencer Horn | Acting Special Agent in Charge | Acting Senior Executive Service (SES) level personnel from the New York Field Office |
| Leslie Backschies | Acting Assistant Director in Charge | Senior Executive Service (SES) level personnel from the New York Field Office |
| Christopher Raia | Assistant Director in Charge | Senior Executive Service (SES) level personnel from the New York Field Office |

The FBI searched within each of the classified and unclassified accounts of the possible custodians identified above for communications created or received between March 17, 2025, and July 29, 2025, containing the following search terms: "Epstein" and "File". The FBI determined that these search terms would reasonably locate any potentially responsive email communications within the accounts of these FBI officials. The FBI then reviewed all documents identified in the above-described broad language search to identify and process only those documents that are responsive to the language provided in Plaintiffs' requests.

ADEQUACY OF THE FBI'S SEARCHES

35.    The FBI's email searches of the accounts of these custodians, using the terms and limiters listed above, were reasonably calculated to locate all email records responsive to Plaintiffs' requests. In addition, the FBI determined a search of the 62 File, the Director's Office, and its search of the RPO were reasonably calculated to locate all records responsive to the other portions of Plaintiffs' requests. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that additional searches would reasonably be likely to locate responsive records under the FOIA.

## PART III: JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

36.     The FBI processed records deemed responsive to Plaintiffs' requests to satisfy its obligations under the FOIA. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiffs. Further description of the information withheld, beyond what is provided in this declaration, could reveal the actual exempt information or would employ finite resources only to produce disjointed words, phrases, or sentences, that would have minimal or no informational content.

### BATES NUMBERING, JUSTIFICATION CODES, AND INDEX

37.     *Bates Numbering & Index:* The FBI numbered all pages of its production consecutively as Bates pages FBI (25-cv-2848)-1 through FBI (25-cv-2848)-221. On the pages released in full and in part, these numbers are typically located at the bottom of each page. Additionally, included as an exhibit to this declaration is an index that provides a description of each responsive records and identifies the pages that the FBI withheld in full or part and its justification for doing so. (Ex. F.).

38.     *Justification Codes:* On the Bates-numbered pages provided to Plaintiffs and on pages withheld in full or part and accounted for in the FBI's index, the FBI further categorized its application of exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. Particularly, the FBI applied numerical codes that coincide with specific categories of exempt information. This declaration and index demonstrate that all information withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions or is so intertwined with non-exempt information that segregation is not possible without revealing the underlying exempt information.

39.     Each instance of information withheld pursuant to a FOIA exemption is accompanied by a coded designation that corresponds to one of the categories listed below.[5]  For example, if "(b)(3)-1" appears on a page, the "(b)(3)" designation refers to FOIA Exemption 3 information protected by statute. The numerical designation "1" following "(b)(3)" narrows the main category into a more specific subcategory, such as Federal Grand Jury Information."

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Exemption 3** | **Information Protected by Statute** |
| (b)(3)-1 | Federal Grand Jury Information – Federal Rule of Criminal Procedure 6(e) |
| (b)(3)-8 | Child Victims' & Child Witnesses' Rights Act – 18 U.S.C. § 3509(d) |
| **Exemption 5** | **Privileged Information** |
| (b)(5)-1 | Deliberative Process Privilege |
| (b)(5)-2 | Attorney Client Privilege |
| (b)(5)-3 | Attorney Work Product Privilege |
| **Exemptions 6 & 7(C)** | **Clearly Unwarranted/Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 & (b)(7)(C)-1 | Names and Other Identifying Information of FBI Special Agents and Professional Staff |
| (b)(6)-3 & (b)(7)(C)-3 | Names and Other Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 & (b)(7)(C)-4 | Names and Other Identifying Information of Third Parties of Investigative Interest |
| (b)(6)-5 & (b)(7)(C)-5 | Names of Non-FBI Federal Government Personnel |
| (b)(6)-8 & (b)(7)(C)-8 | Names and Other Identifying Information of Third-Party Victims |
| **Exemption 7(A)** | **Pending Enforcement Proceedings** |
| (b)(7)(A)-1 | Information, the Disclosure of which Could Reasonably be Expected to Interfere with Pending Enforcement Proceedings |
| **Exemption 7(D)** | **Confidential Source Information** |
| (b)(7)(D)-5 | Names and Other Identifying Information of Individuals who Provided Information Under an Express Assurance of Confidentiality and Information Provided |
| **Exemption 7(E)** | **Law Enforcement Techniques and Procedures** |
| (b)(7)(E)-3 | FBI Internal E-mail Addresses, Non-Public Web Addresses, Computer Banner Lines and non-public Telephone Numbers |
| (b)(7)(E)-7 | Non-Public Database Identifiers and Printouts |
| (b)(7)(E)-11 | Computer Analysis Response Team Data Analysis |

---

[5] The FBI has implemented standard codes for justification categories. Not all codes are applicable in each FOIA litigation; therefore, the codes in the below "Summary of Exemption Categories" chart may not be sequential if certain codes are not relevant to the records at issue.

| (b)(7)(E)-21 | Confidential Human Source Program File Number(s) |
| (b)(7)(E)-30 | Non-Public Details of Resource Allocation |

FOIA EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

40.     FOIA Exemption 3 exempts from disclosure information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; <u>or</u> (A)(ii) establishes particular criteria from withholding <u>or</u> refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The OPEN FOIA Act of 2009 established an additional requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite [] to this paragraph" in order to qualify under Exemption 3.

*(b)(3)-1: Federal Grand Jury Information –*
*Federal Rules of Criminal Procedure, Rule 6(e)*

40.     The FBI asserted Exemption (b)(3) to protect Federal Grand Jury ("FGJ") information pursuant to Federal Rule of Criminal Procedure 6(e).[6] As relevant to 5 U.S.C. § 552(b)(3)(B), Rule 6(e) is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009.[7] It is well established Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained.

---

[6] As prescribed by 18 U.S.C. § 3771 (subsequently repealed by Pub.L. 100-702, Title IV, § 404(a)(1) (Nov. 19, 1988) and replaced by 28 U.S.C. § 2074), proposed rules become effective ninety days after the Chief Justice reports them to Congress.  By order of April 26, 1976, the Supreme Court adopted amendments to the Federal Rules of Criminal Procedure which included Rule 6(e) and reported the amendments to Congress.  Congress voted to delay the effective date of several of the proposed rules, to include Rule 6(e), "until August 1, 1977, or until and to the extent approved by Act of Congress, whichever is earlier."  Pub.L. No. 94-349 § 1, 90 Stat. 822 (1976). Subsequently, Congress, by statute, enacted a modified version of Rule 6(e).  *See* Pub.L. No. 95-78, § 2(a), 91 Stat. 319 (1977), FED. R. CRIM. P. 6(e).

[7] The OPEN FOIA Act of 2009 was enacted October 28, 2009.  *See* Pub.L. 111-83, 123 Stat. 2142, 2184.

Records responsive to Plaintiffs' requests detail information about one or more federal grand juries empaneled in relation to the investigation at issue and were clearly marked on the face of the documents as relating to a federal grand jury.

41.     Specifically, the responsive records contain information regarding an FBI document containing detailed information concerning the identity to whom the FGJ subpoena was issued. Wherever the FBI protected the information, it found a clear nexus to federal grand jury proceedings on the face of the responsive document. Disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury, which the FBI is precluded from disclosing. This is because the withheld information relates to the information reviewed by a federal grand jury in the scope of its investigation. Thus, the FBI properly withheld this information pursuant to Exemption (b)(3), in conjunction with Rule 6(e).

### (b)(3)-8: The Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509

42.     The privacy protection measures enacted in 1990, within the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509, were created to protect minor children involved in criminal proceedings. Though this statute was enacted well before the Open FOIA Act of 2009, it refers to particular types of matters that must be withhold from public disclosure. Specifically, 18 U.S.C. § 3509(d) protects from disclosure certain records containing identifying information pertaining to children involved in criminal proceedings.  A child is defined in 18 U.S.C. § 3509(a)(2) as "a person who is under the age of 18, who is or is alleged to be (A) a victim of a crime of physical abuse, sexual abuse, or exploitation; or (B) a witness to a crime committed against another person." The records at issue detail child victim interview statements which recount in depth graphic detail of the sexual assaults this material is exempt from release.

Accordingly, the FBI asserted Exemption 3 in conjunction with 18 U.S.C. § 3509 to protect the names and identifying information of minor children victims present within the investigative records at issue.

EXEMPTION 5 – PRIVILEGED INFORMATION

43.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency" or "intra-agency" memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

44.     Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context, and incorporates the attorney work product, attorney-client, and deliberative process privileges.  Generally, the attorney work product privilege protects documents and other memoranda prepared by an attorney or under the direction of an attorney as part of, or in reasonable anticipation of litigation. The attorney-client privilege protects confidential communications from a client to an attorney and from an attorney to a client for the purpose of seeking and providing legal advice.  The privilege covers client-supplied information and opinions given by an attorney based on and reflecting that information.  The deliberative process privilege protects pre-decisional, deliberative communications that are part of a process by which agency decisions are made.  It protects deliberations and recommendations that form part of an agency decision-making process, as well as the selection and sorting of factual information relied upon as part of the decision-making process.

45.     In order to apply Exemption 5, agencies must first satisfy the threshold requirement – *i.e.*, show that the information protected was "inter-agency" or "intra-agency." Once the threshold is satisfied, agencies must satisfy the elements of the pertinent privilege. With respect to the attorney work product privilege, agencies must show that the withheld information

was created by, or for, an attorney in reasonable anticipation of litigation. With respect to the attorney-client privilege, agencies must show that the withheld information concerns confidential information shared by a client with an attorney for the purpose of obtaining legal advice or assistance. With respect to the deliberative process privilege, agencies must show that the withheld information was both pre-decisional – *i.e.*, antecedent to a final agency decision – and deliberative – *i.e.*, part of the process in which the agency engaged in an effort to reach a final decision (whether or not any final decision was ever reached).

### *(b)(5)-1: Deliberative Process Privilege*

46.     In Exemption category (b)(5)-1, the FBI protected privileged, deliberative materials. The deliberative process privilege protects the internal deliberations of the government by insulating recommendations and analyses comprising the decision-making process. In turn, Exemption 5 allows for the withholding of such privileged material – *i.e.*, material that contains, or was prepared in connection with the formulation of, evaluations, deliberations, conclusions, or recommendations. The privilege also protects records and information that if disclosed, would reveal the agency's collection of multitudinous facts, and the sorting, evaluation, and analysis of those facts in order to make recommendations or reach a final agency decision. Exemption 5, when asserted in conjunction with the deliberative process privilege, is predicated on the recognition that release of this privileged information would stifle its decision-making process. Furthermore, exempting such documents from disclosure also protects against public confusion that might result from preliminary disclosure of opinions and information that do not, in fact, reflect the final views or policies of the FBI. The exemption and privilege together protect not only documents but also the integrity of the deliberative process itself where exposure of the process would result in harm. The FBI invokes Exemption 5 and the deliberative process

privilege because FBI employees would hesitate to offer their candid and conscientious opinions to superiors or coworkers if they knew that their opinions of the moment might be made a matter of public record at some future date, and because such self-censorship would, in turn, degrade the quality of agency decisions by depriving the decision-makers of fully explored options developed from robust debate.

47.     The FBI relied on Exemption 5 and the deliberative process privilege to protect internal deliberative communications and draft documents, to include emails and draft letters. These materials reflect deliberations integral to reaching final agency decisions or were key to a decision-making process aimed at developing policy/best agency decisions. These communications, and draft documents, are deliberative and pre-decisional.  Additionally, in compliance with the FOIA Improvement Act of 2016, all of this material was created less than 25 years before the submission of Plaintiffs' requests.

Draft Materials

48.     The FBI withheld draft copies of FBI letters detailing the inquiry response to AG Bondi's February 27, 2025, letter. The material protected is pre-decisional and deliberative in that it does not reflect final agency decisions. Instead, the FBI letter constitutes a pre-decisional and deliberate response recommendation for further review, recommendations, and revisions. The reasonably foreseeable harm in release here would be a chilling effect on agency employees' willingness to share raw, unrefined ideas and candid feedback should they know, it could become subject to public disclosure. Release could set a dangerous precedent as the FBI would be seen as unwilling to shield its employees' deliberations from public scrutiny and could result in hesitancy to participate fully in such deliberations by FBI employees during future deliberations. Additionally, release of this material would create public confusion as this material predates final

agency decisions. It could potentially cast doubt on the accuracy of actual, final agency decisions/policies or cause public misunderstanding as to what are the actual FBI policies/decisions.

49.     The FBI segregates non-deliberative facts, whenever possible. Here, the FBI was unable to segregate any additional information for release, as such non-deliberative factual material was inextricably intertwined with agency deliberations. For the reasons discussed above, the FBI properly applied the deliberative process privilege under Exemption 5 to withhold pre-decisional and deliberative material.

*(b)(5)-2: Attorney-Client Privilege*

50.     In Exemption category (b)(5)-2, the FBI protected privileged attorney-client communications. The attorney-client privilege is appropriately asserted to protect confidential communications between a client seeking legal advice from a professional legal adviser in his capacity as a lawyer. Such communications are permanently protected from disclosure by the legal adviser unless the client waives the protection. This privilege encompasses confidential communications made to an agency attorney by decision-making personnel as well as lower echelon employees who possess information relevant to an attorney's advice-rendering function. Disclosure of communications between the FBI/DOJ attorneys and their clients would inhibit candor between the clients and their attorneys in relation to the issues about which they are seeking legal advice. Such candor and full disclosure are necessary to ensure that thorough and sound legal advice is provided.

51.     The FBI protected confidential communications between and among FBI and DOJ counsel and FBI employees (their clients), that reflect the seeking or rendering of legal advice.  Specifically, the FBI withheld email communications and other documents that sought

or rendered guidance from DOJ counsel relating to redaction placement on various documents as a part of record processing. The communications between clients and attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance or advice in relation to government legal positions. Release of this information would call into question the FBI's commitment to withhold confidential information shared between agency clients and attorneys and could dissuade agency attorneys and clients from fully sharing such information and endanger agency attorneys' ability to provide the best possible legal representation of their clients. Furthermore, it would provide advantage to individuals seeking legal action against the government. It would provide information traditionally privileged in a legal context and disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies. Accordingly, the FBI properly withheld these privileged communications pursuant to Exemption 5.

*(b)(5)-3: Attorney Work Product Privilege*

52.    In Exemption category (b)(5)-3, the FBI protected privileged attorney work products. The attorney work product privilege protects such tangible and intangible items as interviews, memoranda, correspondence, mental impressions, and personal beliefs prepared or developed by an attorney, or at the direction of an attorney, in contemplation of litigation, or as was the case here, for the purposes of a DOJ investigation based on allegations of possible misconduct.   Specifically, the privilege is predicated on the recognition that proper preparation of a case depends on an attorney's ability to assemble information, sort relevant from irrelevant facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny.

53.     Here, the FBI relied on the attorney work product privilege to protect materials created by DOJ and/or FBI attorneys, or at the direction of attorneys, as part of a DOJ investigation into allegations of misconduct. Specifically, the FBI protected guidance and instructions provided by DOJ and FBI attorneys in preparing documents files for DOJ review in relation to this investigation.  This information satisfies Exemption 5's threshold because these records were exchanged within the FBI (*i.e.* between FBI personnel) and exchanged intra-agency (*i.e.* between the FBI and DOJ). As described *supra*, release of this type of information would interfere with government attorneys' ability to properly prepare their legal theories and strategies and hinder them in providing the best possible representation of their clients [the government]. Finally, because the attorney work product privilege protects both factual and deliberative material, segregation is not required. Accordingly, the FBI properly withheld this information pursuant to Exemption 5.

54.     Specifically, based on my discussions with the DOJ and FBI leadership, as highlighted by Attorney General Bondi's February 27, 2025, letter related to DOJ's investigation and DOJ's request seeking "proposed personnel actions" from the FBI, attorney work product applies to protect inter/intra-agency materials created at the direction of DOJ and/or FBI attorneys, as these records were part of an investigation into possible personnel misconduct.  Additionally, the pertinent records were compiled to develop training to clarify legal guidance to ensure compliance with all applicable statutes, as well as to identify third parties potentially implicated in criminal wrongdoing through a search of client lists or other relevant information. These records readily satisfy the elements of the attorney work product privileged because they were created at the direction of an attorney involved in the potential investigation into FBI misconduct. Because the attorney work product privilege protects both

factual and deliberative material, segregation is not required. Accordingly, the FBI properly withheld this information, pursuant to Exemption 5.

EXEMPTION 7 THRESHOLD

55.     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled in furtherance of the FBI's investigation of alleged FBI non-compliance related to a request from AG Bondi for the production of the entire scope of files related to the sex-trafficking[8] investigations of Jeffery Epstein.[9] Additionally, the pertinent records were compiled to develop training to ensure efficient and effective processing of the Epstein documents at issue in compliance with all applicable statutes and to identify third parties potentially implicated in criminal wrong doing through a search of client lists or other relevant information.[10] Considering

---

[8] On July 2, 2019, Jeffrey Epstein was indicted by a federal grand jury in the United States District Court for the Southern District of New York on one count of conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 371, and one count of sex trafficking, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and 2. *United States v. Epstein*, No. 19 Cr. 490 (RMB) (S.D.N.Y.), ECF No. 2.

[9] *See*- "Letter from Attorney General Pamela Bondi to FBI Director Kash Patel (Feb. 27, 2025)."- https://www.justice.gov/ag/media/1391331/d?inline (last accessed November 24, 2025).

[10] *See* Memorandum from the U.S. Department of Justice and Federal Bureau of Investigation (July 6, 2025),https://www.justice.gov/opa/media/1407001/dl?inline (last accessed November 24, 2025).

these records were compiled to document the FBI's investigation of potential crimes and training, the FBI determined they were compiled for a law enforcement purpose.

*Exemption 7(A): Pending Law Enforcement Proceedings*

56.     Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

57.     Application of this exemption requires: the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding. Often, the FBI asserts Exemption 7(A) categorically to withhold a variety of different documents in an investigative file, which the FBI then groups into functional categories and describes in greater detail. In this case, however, the FBI asserted Exemption 7(A) in a limited fashion to protect information originated and serialized in the underlying criminal investigative file of Jeffrey Epstein.[11]  The Government maintains its position asserting 7A due to Maxwell asserting she intends to file 2255 petition.[12] Therefore; the release of this information would reveal non-public information concerning pending enforcement procedures, to include the existence of unacknowledged investigations/and proceedings, that could reasonably be expected to interfere with these appeal proceedings. The FBI determined release of any of this material would provide

---

[11] These records are subject to litigation in *Radar Online v. DOJ*, 17-cv-3956 (SDNY), 24-1964 (2d. Cir.). On June 26, 2024, the District Court for the Southern District of New York issued a ruling in the FBI's favor granting the FBI's motion for summary judgment and upholding the FBI's assertion of Exemption 7A to categorically deny these records. This matter is currently subject to an appeal.

[12] *See United States v. Maxwell*, 20 Cr. 330, ECF No. 803 (submission by Maxwell stating that "[s]he is preparing a habeas petition").

criminals with information about the government's investigation in ongoing matters, allow them to discover/tamper with witnesses and/or destroy evidence. As such, revealing this information could reasonably be expected to interfere with pending enforcement proceedings. Thus, the FBI has applied Exemption 7(A) to protect this information.

*FOIA Exemptions (b)(6) and (b)(7)(C)*
*Unwarranted Invasion of Personal Privacy*

58.     Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

59.     Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[13]

60.     When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information

---

[13] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

about an individual, their name, or their identifying information[14] would shed light on the FBI's performance of its mission to protect the American people and uphold the Constitution of the United States, and its function to: protect the United States from terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights. In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

61.    Furthermore, considering privacy concerns are typically obviated once an individual is deceased,[15] when processing FOIA requests, the FBI takes several steps to ascertain the current life/death status of the individuals whose names are withheld. The FBI uses the birth date and/or the date of the investigation to determine whether an individual is living or deceased, to the extent either or both of these pieces of information are discernable from the file. The date of birth is used to apply the judicially recognized "100-year rule," i.e., if the individual was born more than 100 years ago, the FBI presumes that he or she is dead, and the name is released. The FBI also uses institutional knowledge gained from prior FOIA requests or internal records. By using institutional knowledge, the FBI can identify with sufficient certainty the life/death status of certain individuals. If the FBI is unable to determine the life/death status of an individual through the use of these methods, the name of the individual is withheld pursuant to Exemptions 6 and 7(C), when it finds disclosure would constitute an unwarranted invasion of those

---

[14] Hereafter, identifying information includes the following: dates of birth, residences, and telephone numbers.

[15] In some circumstances, surviving relatives of a deceased individual retain privacy interests in their information, even after the individual's death. *See generally National Archives v. Favish*, 124 S. Ct. 1570 (2004).

individuals' privacy should they still be living, and no public interest would be served in releasing the names. It is also the FBI's policy to release names of high-ranking FBI officials as well as individuals in public positions, as they have diminished privacy rights while acting in their official capacity. This policy is applied to the individual's position at the time of the document, and not the present.

*(b)(6)-1 and (b)(7)(C)-1: Names and Identifying Information of*
*FBI Special Agents and Professional Staff*

62.     Within Exemption category (b)(6)-1 and (b)(7)(C)-1, the FBI withheld the names and identifying information of FBI Special Agents (SAs) and professional staff. These FBI SAs and professional staff were responsible for conducting, supervising, and/or maintaining the investigation and administrative activities related to a request from AG Bondi for the production of the entire scope of files related to the investigation of Jeffery Epstein reflected in the documents responsive to Plaintiffs' requests. These responsibilities included, but are not limited to, the following: coordinating/completing tasks in support of the FBI's investigative and administrative functions, compiling information, and/or reporting on the status of the administrative activities.

63.     Assignments of SAs to any particular investigation are not by choice. Publicity, adverse or otherwise, arising from a particular investigation, may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work. The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative activities, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. The publicity associated with the release of an SA's identity in connection with a particular investigation could trigger hostility toward a

particular SA. During an investigation, an SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Individuals targeted by such investigations, and/or those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in an investigation. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs, and other federal employees involved in a particular investigation. In this case, the high profile and notoriety of the subject matter greatly increases the potential for targeting of these SAs. There is no public interest served by disclosing the SAs' identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

64.    The FBI also withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C). These FBI professional staff were assigned to handle tasks related to the deployment of training materials and processing the investigative files. Similar to FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in specific investigations/investigative activities. Furthermore, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI

professional staff to the general public because their identities would not, themselves,

significantly increase the public's understanding of the FBI's operations and activities.

Accordingly, after balancing these professional staff employees' substantial privacy interests

against the non-existent public interest, the FBI determined disclosure of their identities would

constitute a clearly unwarranted invasion of their personal privacy. Therefore, the FBI properly

withheld the names and identifying information of FBI professional staff pursuant to Exemptions

6 and 7(C).

*(b)(6)-3 and (b)(7)(C)-3: Names and Identifying Information of Third Parties Merely Mentioned*

65.     In Exemption category (b)(6)-3 and (b)(7)(C)-3, the FBI withheld the names and

identifying information of third parties who were merely mentioned in the investigative records

responsive to Plaintiffs' requests. These underlying investigative records were used, in this

instance, as screenshots for training purposes. Therefore, in the context of the training slides,

they are merely mentioned for training purposes only. The FBI has information about these third

parties in its files because these individuals were tangentially mentioned in conjunction with FBI

investigative efforts. These individuals were not of investigative interest to the FBI. These third

parties maintain substantial and legitimate privacy interests in not having this information

disclosed and thus, being connected with an FBI investigation. Considering the FBI is an

investigative and intelligence agency, disclosure of these third parties' names and/or identifying

information in connection with an FBI investigation carries an extremely negative connotation.

Disclosure of their identities would subject these individuals to possible harassment or criticism

and focus derogatory inferences and suspicion on them. The FBI then considered whether there

was any public interest that would override these privacy interests and concluded that disclosing

information about individuals who were merely mentioned in an FBI investigative file would not

significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

*(b)(6)-4 and (b)(7)(C)-4: Names and Identifying Information of Third Parties of Investigative Interest*

66.    In Exemption category (b)(6)-4 and (b)(7)(C)-4, the FBI withheld the names and identifying information of third parties who were of investigative interest to the FBI. Being identified as a subject of FBI investigative interest carries a strong negative connotation and a stigma, whether or not these individuals ever committed criminal acts. Release of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention. Furthermore, it could result in professional and social repercussions, due to resulting negative stigmas. Accordingly, the FBI determined these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, disclosing personal information about these individuals would not significantly increase the public's understanding of the FBI's performance of its mission and so the FBI concluded that there was no public interest here sufficient to override these individuals' substantial privacy interests. For these reasons, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

*(b)(6)-5 and (b)(7)(C)-5: Names of Personnel from Non-FBI Federal Agencies*

67.    In Category (b)(6)-5 and (b)(7)(C)-5, the FBI withheld the names of personnel from non-FBI federal government agencies who provided information to or otherwise assisted the FBI in the investigation and administrative activities related to a request from AG Bondi for the production of the entire scope of files related to the investigation of Jeffery Epstein reflected in the documents responsive to Plaintiffs' requests. The rationale for protecting the identities of

other government employees is the same as the rationale for protecting the identities of FBI employees. See ¶¶ 63-65, *supra.* Publicity, adverse or otherwise, concerning the assistance of these other agency employees in FBI investigative activities would seriously impair their effectiveness in assisting or participating in future FBI investigations and/ or investigative activities. The privacy consideration also protects these individuals from unnecessary, unofficial questioning as to the FBI investigation. It is possible for a person targeted by law enforcement action to carry a grudge which may last for years, and to seek revenge on the personnel involved in the investigative activities at issue in these FBI records. The publicity associated with the release of their names and/or identifying information in connection with these investigative activities could trigger hostility towards them by such persons. Therefore, these employees maintain substantial privacy interests in not having their identities disclosed in this context. In contrast, there is no public interest to be served by the disclosure of these employees' names and/or identifying information because their identities, by themselves, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities. Accordingly, the FBI properly protected these employees' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

*(b)(6)-8 and (b)(7)(C)-8: Names and Identifying Information of Third-Party Victims*

68.    In Exemption category (b)(6)-8 and (b)(7)(C)-8, the FBI withheld the names and identifying information of third-party victims. Releasing these individuals' identities in the context of these investigative records would cause embarrassment, as well as unsolicited and unnecessary attention to be focused on these individuals. Such a release could force them to relive emotionally trying events, causing further invasion of their privacy, in excess of the harms they've already been forced to endure. Thus, these victims maintain strong privacy interests in

the protection of such personal information. Furthermore, there is no legitimate public interest to

be served by releasing the identities of these victims because their identities, themselves, would

not shed light on the operations and activities of the FBI. The FBI determined disclosure of this

information would constitute a clearly unwarranted invasion of these individuals' personal

privacy and consequently withheld this information pursuant to FOIA Exemptions 6 and 7(C).

*Exemption 7(D) – Confidential Source Information*

69.    Exemption 7(D) exempts "records or information compiled for law enforcement

purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation, or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

70.    Numerous confidential sources report to the FBI on a regular basis; they provide

information under express assurances of confidentiality and are "informants" within the common

meaning of the term.  Others are interviewed and/or provide information under implied

assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality

may be inferred).  In either situation, these sources are considered to be confidential because they

furnish information only with the understanding that their identities and the information they

provided will not be divulged outside the FBI.  Information provided by these sources is singular

in nature, and if released, could reveal their identities.  The FBI has learned through experience

that sources assisting, cooperating with, and providing information to the FBI must be free to do

so without fear of reprisal.  The FBI has also learned that sources must be free to furnish

information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public.  Sources providing information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence.

71.     The release of a source's identity would forever eliminate that source as a future means of obtaining information.  In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.  Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws.

*7(D)-5: Names, Identifying Information of, and Information Provided by, Sources under Express Assurances of Confidentiality*

72.     Within Exemption category 7(D)-5, the FBI protected the names, identifying information of, and information provided by third parties to the FBI under express grants of confidentiality. When processing the records at issue, the FBI found evidence these individuals, who provided specific and detailed information that is singular in nature requested their identities not be revealed and the information they provided to remain confidential.

73.     Providing express assurances of confidentiality is essential to the FBI's ability to obtain relevant and accurate information from Confidential Human Sources (CHSs). Without these assurances by the FBI, those with access to information critical to FBI investigations may be reluctant to provide information or may modify their statements to lessen the severity of any backlashes; therefore, the FBI must provide credible assurances of confidentiality to these individuals in order to obtain factual, relevant, and timely information. Release of these sources' identities and/or any singular information they provided may lead to the revelation of their

identities and would also display unwillingness by the FBI to honor its assurances of confidentiality to current and future CHSs. Therefore, releasing this information would have a lasting negative impact on the FBI's informant program – it would greatly hinder the FBI's ability to recruit and maintain CHSs willing to provide accurate and relevant information pertaining to criminal activities.

74.    In sum, the FBI located evidence certain individuals supplied information to the FBI with express assurance their names, identifying information, and the information they provided would be held in confidence. Release of such information would endanger these CHSs and cause great detriment to the FBI's ability to recruit and maintain reliable CHSs; thus, the FBI protected this information pursuant to Exemption 7(D).

EXEMPTION (B)(7)(E) INVESTIGATIVE TECHNIQUES AND PROCEDURES

75.    FOIA Exemption (b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

76.    The FBI asserted Exemption (b)(7)(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

77.    Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise

known to the public.  Specifically, the FBI asserted Exemption 7(E) to protect the following

categories of information.

*(b)(7)(E)-3: FBI Internal E-mail Addresses, Non-Public Web Addresses, Computer Banner Lines and Non-Public Telephone Numbers*

78.    In Exemption category (b)(7)(E)-3, the FBI withheld internal e-mail addresses,

non-public web addresses, computer banner lines and non-public telephone numbers of FBI

personnel. Releasing this information could provide criminals with specific targets for possible

cyber-attacks and other types of attacks on FBI secure communications. Releasing this

information would provide criminals with specific targets for attacks on FBI communications

through "spoofing" or other illegal means.[16]  For example, "spoofing" occurs when a criminal

disguises a communication from an unknown source to appear as if the communication is

coming from a known, trusted source. Spoofing occurs with emails, telephone calls, and

websites. Criminals often use social engineering techniques to elicit sensitive information from

the unsuspecting victim. This can be especially dangerous when criminals spoof numbers of law

enforcement agencies so as to appear as if they are from official law enforcement agencies.

Considering the current cyber-security environment where government data breaches and other

hacking attempts on government systems are prevalent, it is likely that the release of this type of

information could provide hackers with avenues to exploit the FBI's Information Technology

---

[16] As recently as June 5, 2024, the FBI's Portland Field Office warned the public of scammers spoofing caller ID information in order to falsely represent themselves as FBI agents and demand payment from victims. FBI Portland advised that in 2023, 14,190 people were victims of government impersonation scams, with losses totaling more than 394 million dollars. *See FBI Warns Public to Beware of Scammers Impersonating FBI Agents and Other Government Officials*, FBI (June 5, 2024), https://www.fbi.gov/contact-us/field-offices/portland/news/fbi-warns-public-to-beware-of-scammers-impersonating-fbi-agents-and-other-government-officials (last accessed November 20, 2025).

system. It is possible they could use this information to gain unauthorized access to FBI systems, view and/or manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol, and/or hinder the FBI's ability to enforce the law by disrupting the FBI's internal communications. Releasing this information poses substantial risks to FBI information systems, could potentially decrease the FBI's effectiveness, and could enable criminals to circumvent the law. Accordingly, the FBI asserted Exemption 7(E) to withhold this information.

### 7(E)-7: Database Information and/or Search Results

79.    In Exemption category 7(E)-7, the FBI protected the identities of sensitive investigative databases and database search results located through queries of these non-public databases used for official law enforcement purposes by the FBI. Releasing the identities of these databases and any information located through queries of these databases would give criminals insight into the available tools and resources the FBI uses to conduct criminal and national security investigations (*i.e.*, the scope of information stored within the databases, how the FBI uses the databases to support its investigations, the types of information most valued by the FBI for particular investigations, and vulnerabilities of the databases).

80.    Revealing the use of these databases in the context of FBI investigative records, and the information generated through queries of these databases, would reveal the nature of their utility to FBI investigators and the scope of information stored within the databases. Disclosing when and why the FBI queries these databases would reveal key information about FBI investigative strategies. This is because different investigative databases contain varying datasets, and revealing the types of data sought by investigators in particular investigative circumstances would reveal the FBI strategies employed in response to different investigative circumstances.  Additionally, disclosing the search results for particular subjects would provide

criminals with an understanding of the scope of FBI collected intelligence on particular subjects. It would expose possible intelligence gaps and/or intelligence gathering strengths. This would allow criminals to make informed decisions on how they might structure their behavior to exploit these strengths and weaknesses and avoid detection and/or disruption by the FBI.

81.     Revealing the types of information stored in these databases would also reveal the types of information most useful to FBI investigators. This would provide criminals with an understanding of how they might structure their behavior and/or deploy countermeasures to deprive the FBI of useful intelligence/evidence, thus jeopardizing the FBI's investigative mission.

82.     Finally, revealing the identities of these databases could jeopardize the FBI's investigative mission by revealing exactly where the FBI is storing and obtaining valuable investigative data. Knowing the database names makes the original source data an attractive target for compromise. It would allow criminals who gain access to FBI systems an idea of where they can go to discover what the FBI knows, how it gathered the information, and possible information regarding the FBI's investigative strategies. It would also offer these criminals the opportunity to corrupt or destroy information stored within these databases.

83.     In summary, release of the identities of sensitive investigative databases and database search results would impede the FBI's effectiveness and potentially aid in circumvention of valuable investigative techniques. Therefore, the FBI withheld this information pursuant to Exemption 7(E).

*7(E)-11: Computer Analysis Response Team Data Analysis*

84.     In coded Exemption category 7(E)-11, the FBI protected a description of evidence that was analyzed by the Computer Analysis Response Team ("CART"). CART provides digital

forensics, technical capabilities, and related services and support to the FBI, intelligence organizations and other law enforcement agencies.  CART provides support to investigations that are reliant, in whole or in part, upon digital evidence, namely through the acquisition, preservation, examination processing, and presentation of digital information stored in computers or other electronic devices or media. CART analyzes a variety of digital media, including, but not limited to, desktop and laptop computers, Compact Disks (CDs)/Digital Video Disks (DVDs), cell phones, digital cameras, digital media players, flash media, and other digital media storage devices. The withheld information includes a detailed description of the specific evidentiary item analyzed, the technique used for the analysis, and summarizes the report that resulted from that analysis. Additionally, the withheld information describes the source of the evidence, content, and detailed information that was able to be gleaned from the CART download.

85.     CART examiners are experts at extracting data from digital media.  Providing detailed information about CART software, equipment, techniques, procedures, and/or types of reports generated by CART during their forensic testing processes would impede the FBI's effectiveness in investigating crimes where evidence can be found on computers and other digital media. It would also aid in circumvention of the law by providing criminals the information necessary for them to adjust behavior to avoid detection. For example, once it is known that the FBI has the ability to penetrate the security of a specific type of device, criminals would be able to shore up those vulnerabilities by developing and/or utilizing technology less susceptible to law enforcement detection, penetration, or scrutiny, and then use or develop that technology to counteract the techniques used by CART. Accordingly, the FBI properly withheld this information pursuant to Exemption 7(E).

*(b)(7)(E)-21: Investigative Techniques and Procedures Relevant to the FBI's Confidential Informant Program*

86.     In Exemption category (b)(7)(E)-21, the FBI protected non-public details of investigative techniques and procedures of its informant program concerning the format and meaning behind the various parts of Confidential Human Source ("CHS") symbol numbers and technical source numbers. Gathering investigative and intelligence information through the use of CHSs and technical sources is a valuable technique and procedure that is critical to the successful pursuit of FBI investigations. For the FBI to pursue its law enforcement and intelligence gathering missions, it is essential for the FBI to protect these non-public program details from being disseminated to the public.

87.     The FBI does not refer to the confidential sources by their true names. Instead, sources were referred to only by their individually assigned permanent source symbol numbers, in order to further protect their identities within FBI communications. When a CHS provides the FBI information related to investigative subjects, the FBI typically records such reporting in source reporting documents. These source reporting identifiers are housed within the CHS's individual FBI informant file, but then also cross-serialized within the relevant investigative files of the subjects on which the source provided information.

88.     The FBI withheld specific non-public details describing the format of older and current CHS numbers, and withheld the examples provided in the processing guidance of the various types of symbol source numbers. These withheld examples identify the meaning behind various parts of the symbol source number. Specifically, these examples explain how to identify different types of CHSs, their subject matter area, and location simply by understanding the format of the symbol number assigned to them. The FBI also withheld an example of a technical source number within the records at issue under this same rationale. The foreseeable harm in

disclosing these non-public details is that criminals could also use this knowledge to determine what type of source the FBI is utilizing in various investigations and locations, based on the format of the symbol number. Furthermore, because information is often gathered from a variety of sources and types of sources in FBI investigations, and the type of source may vary depending on the investigative subject and location, criminals could use this information to adjust their behaviors to avoid detection in various types of criminal matters or localities and could also use the information to weed out sources from their midst. This would eliminate a valuable tool used by the FBI and diminish the overall effectiveness of the FBI's source program. When CHSs become aware that another CHS has been discovered, they become reluctant to continue their cooperation. This diminishes the FBI's capabilities for gathering valuable information and intelligence in its investigations and allows for circumvention of the law. Accordingly, the FBI determined that these non-public details concerning the format and identity of sources is a valuable technique and procedure that is exempt pursuant to FOIA Exemption 7(E).

## 7(E)-30: Resource Allocation

89.     In Exemption category (7)(E)-30, the FBI withheld a chart identifying the specific allocation of resources applied to specific aspects of the transparency project. This includes the employee's position within specific divisions of the FBI, as well as the number of employees of that position and division assigned, the number of premium pay hours worked by the employees and the premium pay expenses applied. By disclosing the details about who, types of experience, how many, and the cost expended from various divisions across the FBI to participate in the transparency project, a potential criminal actor could devise activities designed to mirror similar needs in the future in an effort to tailor their activities or coordinate with other actors to target components with lower response capabilities, funding levels, and/or fewer resources in order to

circumvent the law. Releasing this information would provide criminals attempting to circumvent the law insight into the amount of resources allocated by the FBI within its various divisions for this type of project. This information would, in turn, show how the FBI prioritizes its allocation of resources to different events over time. With that knowledge, an informed criminal would choose to monitor similar projects and then move his or her operations to a different location where they would be less likely to be detected due to reduced available resources and thus would be able to circumvent the law.

90.    In summary, the FBI withheld the allocation of resources applied from various FBI divisions to the transparency project to prevent criminals from adjusting their behavior and activities to circumvent law enforcement efforts in future similar situations. Accordingly, the FBI properly withheld this information pursuant to Exemption 7(E).

**FORESEEABLE HARM STANDARD**

91.    The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record (or a portion of a record) is exempt pursuant to one or more FOIA exemptions. Second, if the record (or portion thereof) is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record (or portion thereof). For the withheld records at issue here (or portions of withheld records), the FBI conducted this two-part analysis and only withheld records (or portions of records) where it determined the withheld

record (or portion) met both of these criteria. The FBI's foreseeable harm is more fully described within each of the above coded exemption justification categories.[17]

## SEGREGABILITY

93.     As discussed in ¶ 23 *supra*, the FBI identified a total of 220 responsive pages and 1 video file consisting of thirty-two minutes and eleven seconds: 2 Released in Full ("RIF"), 59 Released in Part ("RIP"), and 160 Withheld in Full ("WIF"). Each of these categories is discussed below to further address segregability.

    a.   Pages RIF: Following its segregability review, RIDS determined 2 pages could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption.

    b.   Pages RIP. Following its segregability review, RIDS determined 59 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

    c.   Pages WIF. Following its segregability review, RIDS determined 160 pages required withholding in their entirety. RIDS determined that all information on these pages was either fully covered by one or more of the cited FOIA exemptions or determined that any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release. Any further segregation of this

---

[17] 5 U.S.C. § 552(a)(8)(A)(i)(II) does not impose a requirement to articulate harm for Exemption (b)(3)

intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. Also, the FBI withheld 3 pages because they were duplicates of pages accounted for elsewhere in the FBI's production. It is the FBI's standard practice not to process duplicate pages, as doing so expends finite processing resources with a net result of no additional information being released to requesters.

94.    Additionally, the FBI withheld 2 pages because they were duplicates of pages accounted elsewhere in the FBI's production. It is the FBI's standard practice not to process duplicate pages, as doing so expends finite processing resources with a net result of no additional information being released to requesters.

95.    The FBI performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiffs' FOIA requests that are subject to FOIA. The FBI processed the records under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 3, 5, 6, 7(A), 7(C), 7(D), and 7(E). The carefully examined the documents and determined the information withheld from Plaintiffs' in this cases, if disclosed would reveal statutorily protected information; would reveal privileged information; could reasonably be expected to interfere with pending or prospective enforcement proceedings; would cause a clearly unwarranted invasion of personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and/or would disclose techniques and procedures for law enforcement investigations.

After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through F attached hereto, are true and correct copies.

AMIE
NAPIER

Digitally signed by AMIE
NAPIER
Date: 2025.11.24
23:12:43 -05'00'

_____

Amie Marie Napier
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD & BLOOMBERG L.P.,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE &
FEDERAL BUREAU OF INVESTIGATION,

*Defendants*.

Civil Action No. 25-cv-2848 (RCL)

# EXHIBIT A

1

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2025-03-21T19:59:23.552973+00:00 Status: sent Message:

## Individual Information

**Prefix**

**First Name**  Jason

**Middle Name**

**Last Name**  Leopold

**Suffix**

**Email**  jasonleopold@gmail.com

**Phone**  2132704334

**Location**  United States

## Domestic Address

**Address Line 1**  1669 Benedict Canyon Drive

**Address Line 2**

**City**  Beverly Hills

**State**  California

**Postal**  90210

## Agreement to Pay

| How you will pay | I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below. |
|---|---|

| Allow up to $ | 250 |
|---|---|

## Proof Of Affiliation for Fee Waiver

**Waiver Explanation**

I am a senior investigative reporter for Bloomberg News and formerly senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America. I am filing this request on behalf of myself and Bloomberg News.

I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.

Under 5 U.S.C. §552(a)(4)(A)(iii), "Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Disclosure in this case meets the statutory criteria, as the records sought to detail the operations and activities of government. This request is also not primarily in my commercial request, as I am seeking the records as a journalist to analyze and freely release to members of the public.

If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.

I will appeal any denial of my request for a waiver administratively and to the courts if necessary.

**Documentation Files**

## Non-Individual FOIA Request

**Request Information**

I request disclosure from the FBI Records Information Dissemination Section the following records:

1. Any directive, memo, letter or email sent to RIDS Section Chief Michael Seidel, or Mr. Seidel's immediate deputies and aides, by FBI Director Kash Patel or his immediate deputy or aides between March 17 and the present that ordered RIDS personnel and personnel/agents from the FBI's New York and Washington Field to meet at FBI RIDS' offices in Virginia to process files/records of deceased billionaire Jeffrey Epstein.

2. Any response Mr. Seidel or his immediate deputies and aides sent to FBI Director Kash Patel or Mr. Patel's immediate deputy or aides in response to the order to work on processing Jeffrey Epstein files.

3. A spreadsheet or similar data or document identifying the total number of FBI personnel who were ordered and/or tasked to work on processing Jeffrey Epstein files between March 17 and March 22. PLEASE NOTE: I am not interested in personal identifiable information. I am only interested in the number of FBI personnel who worked on this matter, their titles, and the field offices/divisions they work in.

4. The budget (if any such document exists) or a similar document identifying the total costs for FBI personnel to process Jeffrey Epstein files in response to any directive or order by FBI Director Kash Patel or his immediate aides and deputies.

5. The number of hours FBI personnel worked between March 17 through March 21 to process Jeffrey Epstein files. If the hours each agent worked are captured in a document I request a copy of that as well.

6. Any documented instruction or direction provided to FBI personnel on what type of research they were asked to conduct while processing Jeffrey Epstein files.

PLEASE NOTE: I am interested in keeping this request to under 50 pages in order to land in the simple track in hopes of receiving responsive records in a timely fashion. If the records exceed 50 pages please let me know so that I may narrow the request

I certify the foregoing to be true and correct to the best of my knowledge and belief.
_/s/_____JL_____

Reasonably Foreseeable Harm. The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):

(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information. . . .

FBI should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part.

## Expedite

**Expedite Reason**

I ask that my request be given expedited processing because there is an urgency to inform the public about actual or alleged federal government activity, and I am a person primarily engaged in disseminating information.

As senior investigative reporter at Bloomberg News, I am a full-time member of the news media. I therefore qualify as a person primarily engaged in disseminating information.

I have a compelling need to inform the public about how the FBI Director is using its resources during a time when the federal government is attempting to root out waste, fraud and abuse in the name of efficiency. If multiple field offices are being tasked to prioritize work in response a political matter it could leave the public vulnerable to harm if FBI agents are unable to focus on their core mission. The public would be greatly interested in understanding how their tax dollars are being spent and whether the bureau is being used for political purposes by the FBI Director.

These records are not being requested for commercial purposes. I intend to use these records to write news stories and inform the public about actual government activity.

I certify the foregoing to be true and correct to the best of my knowledge and belief.
_/s/_____JL_____

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 9, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664219-000
Subject: RIDS response to Epstein files
processing order

Dear Mr. Leopold:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

☑ Your request has been received at FBI Headquarters for processing.

☑ You submitted your request via the FBI's eFOIPA system.

　　☑ Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

　　☐ Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.

☐ The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

☐ Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑ Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑ For the purpose of assessing any fees, we have determined:

　　☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

　　☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

　　☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Shannon R. Hammer

Shannon R. Hammer
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 9, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664219-000
Subject: RIDS response to Epstein files
processing order

Dear Mr. Leopold:

Please be advised that "unusual circumstances" apply to the processing of your request. See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

- There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).

- There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.

- There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request. See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a multi-queue processing system to fairly assign and process new requests. Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602**. You may also email your response to: foipaquestions@fbi.gov.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Shannon R. Hammer
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 10, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664219-000
Subject: RIDS response to Epstein files processing order

Dear Mr. Leopold:

This is in reference to your letter to the FBI, in which you requested expedited processing for the above-referenced Freedom of Information/Privacy Acts (FOIPA) request. Under Department of Justice (DOJ) standards, expedited processing can only be granted in the following situations.

You have requested expedited processing according to:

☐    **28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

☑    **28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

☐    **28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process rights."

☐    **28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have not provided enough information concerning the statutory requirements for expedition; therefore, your request is denied.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Shannon R. Hammer
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD & BLOOMBERG L.P.,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE &
FEDERAL BUREAU OF INVESTIGATION,

*Defendants*.

Civil Action No. 25-cv-2848 (RCL)

# EXHIBIT B

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2025-03-25T05:09:53.105485+00:00 Status: sent Message:

## Individual Information

| | |
|---:|:---|
| **Prefix** | |
| **First Name** | Jason |
| **Middle Name** | |
| **Last Name** | Leopold |
| **Suffix** | |
| **Email** | jasonleopold@gmail.com |
| **Phone** | 2132704334 |
| **Location** | United States |

## Domestic Address

| | |
|---:|:---|
| **Address Line 1** | 1669 Benedict Canyon Drive |
| **Address Line 2** | |
| **City** | Beverly Hills |
| **State** | California |
| **Postal** | 90210 |

## Agreement to Pay

| How you will pay | I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below. |
|---|---|
| Allow up to $ | 250 |

## Proof Of Affiliation for Fee Waiver

| Waiver Explanation | I am a senior investigative reporter for Bloomberg News and formerly senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America. I am filing this request on behalf of myself and Bloomberg News.

I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.

Under 5 U.S.C. §552(a)(4)(A)(iii), "Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Disclosure in this case meets the statutory criteria, as the records sought to detail the operations and activities of government. This request is also not primarily in my commercial request, as I am seeking the records as a journalist to analyze and freely release to members of the public.

If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.

I will appeal any denial of my request for a waiver administratively and to the courts if necessary. |
|---|---|
| Documentation Files | |

## Non-Individual FOIA Request

**Request Information**

I request disclosure from the FBI Records Information Dissemination Section the following records:

1. A copy of the processing guidelines, guidance or slide decks provided to FBI employees who are tasked with reviewing and processing Jeffrey Epstein files for public release. Please limit the search to the following timeframe: March 18 through the date the search for responsive records is conducted.

Reasonably Foreseeable Harm. The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):

(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information. . . .

FBI should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part.

INSTRUCTIONS REGARDING SCOPE AND BREADTH OF REQUESTS
Please interpret the scope of this request broadly. The FBI is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

# Expedite

**Expedite Reason**

I ask that my request be given expedited processing because there is an urgency to inform the public about actual or alleged federal government activity, and I am a person primarily engaged in disseminating information.

As senior investigative reporter at Bloomberg News, I am a full-time member of the news media. I therefore qualify as a person primarily engaged in disseminating information.

I have a compelling need to inform the public about how the FBI Director is using its resources during a time when the federal government is attempting to root out waste, fraud and abuse in the name of efficiency. If multiple field offices are being tasked to prioritize work in response a political matter it could leave the public vulnerable to harm if FBI agents are unable to focus on their core mission. The public would be greatly interested in understanding how their tax dollars are being spent and whether the bureau is being used for political purposes by the FBI Director.

These records are not being requested for commercial purposes. I intend to use these records to write news stories and inform the public about actual government activity.

I certify the foregoing to be true and correct to the best of my knowledge and belief.
_/s/_____JL_____

\*\*

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

\*\*

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 2, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664215-000
Subject: Epstein files processing guidelines
(On or after March 18, 2025)

Dear Mr. Leopold:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

☑ Your request has been received at FBI Headquarters for processing.

☑ You submitted your request via the FBI's eFOIPA system.

☑ Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

☐ Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.

☐ The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

☐ Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑ Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑ For the purpose of assessing any fees, we have determined:

☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 2, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664215-000
Subject: Epstein files processing guidelines
(On or after March 18, 2025)

Dear Mr. Leopold:

Please be advised that "unusual circumstances" apply to the processing of your request. See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

- There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).

- There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.

- There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request. See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a multi-queue processing system to fairly assign and process new requests. Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602**. You may also email your response to: foipaquestions@fbi.gov.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

April 10, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664215-000
Subject: Epstein files processing guidelines
(On or after March 18, 2025)

Dear Mr. Leopold:

This is in reference to your letter to the FBI, in which you requested expedited processing for the above-referenced Freedom of Information/Privacy Acts (FOIPA) request. Under Department of Justice (DOJ) standards, expedited processing can only be granted in the following situations.

You have requested expedited processing according to:

☐ **28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

☑ **28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

☐ **28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process rights."

☐ **28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have not provided enough information concerning the statutory requirements for expedition; therefore, your request is denied.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD & BLOOMBERG L.P.,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE &
FEDERAL BUREAU OF INVESTIGATION,

*Defendants*.

Civil Action No. 25-cv-2848 (RCL)

# EXHIBIT C

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2025-03-26T23:51:59.848660+00:00 Status: sent Message:

## Individual Information

| | |
|---:|:---|
| Prefix | |
| First Name | Jason |
| Middle Name | |
| Last Name | Leopold |
| Suffix | |
| Email | jasonleopold@gmail.com |
| Phone | 2132704334 |
| Location | United States |

## Domestic Address

| | |
|---:|:---|
| Address Line 1 | 1669 Benedict Canyon Drive |
| Address Line 2 | |
| City | Beverly Hills |
| State | California |
| Postal | 90210 |

## Agreement to Pay

| How you will pay | I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below. |
| --- | --- |
| Allow up to $ | 250 |

## Proof Of Affiliation for Fee Waiver

**Waiver Explanation**

I am a senior investigative reporter for Bloomberg News and formerly senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America. I am filing this request on behalf of myself and Bloomberg News.

I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.

Under 5 U.S.C. §552(a)(4)(A)(iii), "Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Disclosure in this case meets the statutory criteria, as the records sought to detail the operations and activities of government. This request is also not primarily in my commercial request, as I am seeking the records as a journalist to analyze and freely release to members of the public.

If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.

I will appeal any denial of my request for a waiver administratively and to the courts if necessary.

**Documentation Files**

## Non-Individual FOIA Request

**Request Information**

I request disclosure from the FBI Office of the Director the following records:

1. A copy of the "comprehensive report" based on the investigation FBI Director Kash Patel was directed to conduct by Attorney General Pam Bondi on Feb 27 and "proposed personnel actions" related to what AG Bondi said was the FBI's failure to turn over to her the complete set of documents on deceased banker and convicted sex offender Jeffrey Epstein. AG Bondi told FBI Director Patel to deliver this report and the proposed personnel actions to her within 14 days. That deadline has since passed.

BACKGROUND

In a letter dated Feb. 27, 2025, AG Bondi sent a letter to FBI Director Patel. She said she learned from a "source" that the FBI's New York field office was in possession of thousands of pages of Epstein files that were not turned over to her demands. She instructed FBI Director Patel to turn the complete set of records over the next day and she also directed FBI Director Patel to immediately launch an investigation and to provide her with a "comprehensive report of your findings and proposed personnel action within 14 days."

Reasonably Foreseeable Harm. The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):

(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information. . . .

FBI should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part.

INSTRUCTIONS REGARDING SCOPE AND BREADTH OF REQUESTS Please interpret the scope of this request broadly. FBI is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

# Expedite

**Expedite Reason**

I ask that my request be given expedited processing because there is an urgency to inform the public about actual or alleged federal government activity, and I am a person primarily engaged in disseminating information.

As senior investigative reporter at Bloomberg News, I am a full-time member of the news media. I therefore qualify as a person primarily engaged in disseminating information.

I have a compelling need to inform the public about a matter of overwhelming public interest and actual government activity related to Jeffrey Epstein's files and Attorney General Pam Bondi's suggestion that the FBI was engaged in a conspiracy because the bureau did not turn over the full set of records. AG Bondi's direction to FBI Director Kash Patel and her suggestion that FBI personnel should be held accountable for not turning over the records feeds into a "deep state" narrative when there may be other plausible explanations as to why the records were not turned over. Only the full release of the report will help resolve the issue.

These records are not being requested for commercial purposes. I intend to use these records to write news stories and inform the public about actual government activity.

I certify the foregoing to be true and correct to the best of my knowledge and belief.
_/s/_____JL_____

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 2, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664217-000
Subject: FBI Director Comprehensive
Reports (Epstein Files)

Dear Mr. Leopold:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

☑ Your request has been received at FBI Headquarters for processing.

☑ You submitted your request via the FBI's eFOIPA system.

    ☑ Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

    ☐ Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.

☐ The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

☐ Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑ Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑ For the purpose of assessing any fees, we have determined:

    ☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

    ☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

    ☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 2, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664217-000
Subject: FBI Director Comprehensive
Reports (Epstein Files)

Dear Mr. Leopold:

Please be advised that "unusual circumstances" apply to the processing of your request. See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

- There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).

- There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.

- There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request. See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a multi-queue processing system to fairly assign and process new requests. Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602**. You may also email your response to: foipaquestions@fbi.gov.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

April 10, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1664217-000
Subject: FBI Director Comprehensive Reports
(Epstein Files)

Dear Mr. Leopold:

This is in reference to your letter to the FBI, in which you requested expedited processing for the above-referenced Freedom of Information/Privacy Acts (FOIPA) request. Under Department of Justice (DOJ) standards, expedited processing can only be granted in the following situations.

You have requested expedited processing according to:

☐ **28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

☑ **28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

☐ **28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process rights."

☐ **28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have not provided enough information concerning the statutory requirements for expedition; therefore, your request is denied.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD & BLOOMBERG L.P.,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE &
FEDERAL BUREAU OF INVESTIGATION,

*Defendants*.

Civil Action No. 25-cv-2848 (RCL)

# EXHIBIT D

1

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2025-07-21T21:32:07.958973+00:00 Status: sent Message:

## Individual Information

| | |
|---:|---|
| **Prefix** | |
| **First Name** | Jason |
| **Middle Name** | |
| **Last Name** | Leopold |
| **Suffix** | |
| **Email** | jasonleopold@gmail.com |
| **Phone** | 2132704334 |
| **Location** | United States |

## Domestic Address

| | |
|---:|---|
| **Address Line 1** | 1669 Benedict Canyon Drive |
| **Address Line 2** | |
| **City** | Beverly Hills |
| **State** | California |
| **Postal** | 90210 |

## Agreement to Pay

| | |
|---|---|
| **How you will pay** | I am requesting a fee waiver for<br>my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I<br>am willing to pay additional fees and will enter that maximum amount in the box below. |
| **Allow up to $** | 250 |

## Proof Of Affiliation for Fee Waiver

**Waiver Explanation**

I am a senior investigative reporter for Bloomberg News and formerly senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America. I am filing this request on behalf of myself and Bloomberg News.

I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.

Under 5 U.S.C. §552(a)(4)(A)(iii), "Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Disclosure in this case meets the statutory criteria, as the records sought to detail the operations and activities of government. This request is also not primarily in my commercial request, as I am seeking the records as a journalist to analyze and freely release to members of the public.

If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.

I will appeal any denial of my request for a waiver administratively and to the courts if necessary.

**Documentation Files**

## Non-Individual FOIA Request

**Request Information**

I request disclosure from FBI headquarters, the FBI's New York Field Office, the FBI's Records Information and Dissemination Section and the FBI's Enterprise Vetting Center the following records:

1. All communications to/from the FBI's NY Field Office senior executives from FBIHQ and/or the Department of Justice containing instruction, direction, or discussion about the conduct of research they were asked/directed to conduct related to Jeffrey Epstein files.

2. Any communications between NYFO personnel relating to the guidance/direction they received from DOJ and FBIHQ about the searches of Jeffrey Epstein material.

3. Any and all documents related to overtime hours worked by RIDS FOIA units from Jan. 20, 2025 through the present. For clarification, I am not seeking individual time cards but instead broader statistics and analytics data reflecting hours worked.

Reasonably Foreseeable Harm. The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):

(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information. . . .

FBI should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part.

INSTRUCTIONS REGARDING SCOPE AND BREADTH OF REQUESTS Please interpret the scope of this request broadly. The FBI is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

# Expedite

**Expedite Reason**

I ask that my request be given expedited processing because there is an urgency to inform the public about actual or alleged federal government activity, and I am a person primarily engaged in disseminating information.

As senior investigative reporter at Bloomberg News, I am a full-time member of the news media. I therefore qualify as a person primarily engaged in disseminating information.

I have a compelling need to inform the public about a matter of overwhelming public interest that relates to actual government activity. My ability to inform the public about a timely news matter would be lost if my request is not processed in an expedited manner.

Earlier this year, FBI personnel were tasked by Attorney General Pam Bondi and FBI Director Kash Patel with reviewing voluminous files related to the Jeffrey Epstein case files and to prepare those files for public release. This effort reportedly resulted in more than 1000 FBI agents and other personnel working overtime at the FBI's facilities in Virginia to review and redact files. The directive came in February from Bondi after she suggested that the FBI was engaged in a conspiracy because the bureau did not turn over the full set of Epstein records to her in February.

Then, in July, the Justice Department and FBI issued a joint letter stating: "To ensure that the review was thorough, the FBI conducted digital searches of its databases, hard drives and network drives as well as physical searches of squad areas, locked cabinets, desks, closets, and other areas where responsive material may have been stored. These searches uncovered a significant amount of material, including more than 300 gigabytes of data and physical evidence ... While we have labored to provide the public with maximum information regarding Epstein and ensured examination of any evidence in the government's possession, it is the determination of the Department of Justice and the Federal Bureau of Investigation that no further disclosure would be appropriate or warranted."

The final decision by the Department of Justice and FBI not to release additional records led to a public outcry and claims of a coverup by the Department and FBI. Since then, Sen. Dick Durbin sent letter to FBI Director Patel and AG Bondi claiming his office received information that "personnel were instructed to 'flag' any [Epstein] records in which President Trump was mentioned."

The records I seek would help inform the public about the final review of the Epstein files, how that review was conducted as well as the overtime hours paid to FBI personnel to review the records. This is clearly a matter of overwhelming public interest.

These records are not being requested for commercial purposes. I intend to use these records to write news stories and inform the public about actual government activity.

I certify the foregoing to be true and correct to the best of my knowledge and belief.
_/s/_____JL_____

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of

being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 30, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1675665-000
Subject: EPSTEIN, JEFFREY
(COMMUNICATIONS REGARDING FBI
RESEARCH AND GUIDANCE)

Dear Mr. Leopold:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

☑  Your request has been received at FBI Headquarters for processing.

☑  You submitted your request via the FBI's eFOIPA system.

    ☑  Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

    ☐  Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.

☐  The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

☐  Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑  Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑  For the purpose of assessing any fees, we have determined:

    ☐  As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

    ☑  As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

    ☐  As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 230, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1675665-000
Subject: EPSTEIN, JEFFREY
(COMMUNICATIONS REGARDING FBI
RESEARCH AND GUIDANCE)

Dear Mr. Leopold:

Please be advised that "unusual circumstances" apply to the processing of your request. See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

- There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).

- There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.

- There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request. See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a multi-queue processing system to fairly assign and process new requests. Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602**. You may also email your response to: foipaquestions@fbi.gov.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

August 11, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA 90210

FOIPA Request No.: 1675665-000
Subject: EPSTEIN, JEFFREY
(COMMUNICATIONS REGARDING FBI
RESEARCH AND GUIDANCE)

Dear Mr. Leopold:

This is in reference to your letter directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information/Privacy Acts (FOIPA) request. Pursuant to the Department of Justice (DOJ) standards permitting expedition, expedited processing can only be granted when it is determined that a FOIPA request involves one or more of the below categories.

You have requested expedited processing according to:

☐   **28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

☑   **28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

☐   **28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process rights."

☐   **28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have provided enough information concerning the statutory requirements permitting expedition; therefore, your request is approved.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD & BLOOMBERG L.P.,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE &
FEDERAL BUREAU OF INVESTIGATION,

*Defendants*.

Civil Action No. 25-cv-2848 (RCL)

# EXHIBIT E

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 24, 2025

MR. JASON LEOPOLD
1669 BENEDICT CANYON DRIVE
BEVERLY HILLS, CA   90210

*Jason Leopold & Bloomberg L.P. v US DOJ and FBI*
Civil Action No.: 25-cv-2848
FOIPA Request No.: 1664215-0; 1664217-0;
1664219-0; 1675665-0
Subject: Records Related to the FBI Processing of the
Epstein Transparency Project 2025

Dear Jason Leopold:

The FBI has completed its final review of records subject to the Freedom of Information/Privacy Acts (FOIPA) that are responsive to your request. The enclosed documents were reviewed under the FOIPA, Title 5, United States Code, Section 552/552a. Below, you will find checked boxes next to applicable statutes for the exemptions asserted to protect information exempt from disclosure. The appropriate exemptions are noted on the processed pages next to redacted information. In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions. An Explanation of Exemptions is enclosed to further explain the justification for withheld information.

|  | **Section 552** |  |  | | **Section 552a** |
|---|---|---|---|---|---|
| ☐ (b)(1) | | ☑ (b)(7)(A) | | ☐ (d)(5) |
| ☐ (b)(2) | | ☐ (b)(7)(B) | | ☐ (j)(2) |
| ☑ (b)(3) | | ☑ (b)(7)(C) | | ☐ (k)(1) |
| Federal Rules of Criminal Procedure, | | ☑ (b)(7)(D) | | ☐ (k)(2) |
| Rule 6(e); | | ☑ (b)(7)(E) | | ☐ (k)(3) |
| 18 U.S.C. §3509(d) | | ☐ (b)(7)(F) | | ☐ (k)(4) |
| ☐ (b)(4) | | ☐ (b)(8) | | ☐ (k)(5) |
| ☑ (b)(5) | | ☐ (b)(9) | | ☐ (k)(6) |
| ☑ (b)(6) | | | | ☐ (k)(7) |

220 pages were reviewed, and 61 pages are being released.

Please see the paragraphs below for relevant information specific to your request, and see the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

Based on the information you provided, we conducted a search of the places reasonably expected to have records. For more information about records searches and the standard search policy, see the enclosed FBI FOIPA Addendum General Information Section.

It is unnecessary to adjudicate your request for a fee waiver at this time, as no applicable fees were assessed.

Processed records were appropriately Bates stamped FBI(25-cv-2848)-1 through FBI(25-cv-2848)-221.

Duplicate copies of the same document were not processed.

Media consisting of audio and video has been reviewed under the FOIPA, Title 5, United States Code, Sections 552/552a, and this material is being withheld in its entirety by the FBI pursuant to exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).   The exemptions used are explained on the enclosed Explanation of Exemptions.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third-party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Please direct any further inquiries about this case to the attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

*Amie M. Napier*

SectionChief
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)    **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)   **Intelligence Records.** To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)    **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)   **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)  **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)    **Record Searches and Standard Search Policy.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does not include a search for reference entity records or administrative records of previous FOIPA requests.

        a.  *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
        b.  *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii)   **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)  **Foreseeable Harm Standard.** As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)). The FBI considers this foreseeable harm standard in the processing of its requests.

(iv)   **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)     (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)     related solely to the internal personnel rules and practices of an agency;

(b)(3)     specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)     trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)     inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)     personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)     records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)     contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)     geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)     information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)     material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)     information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)     investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)     material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)     required by statute to be maintained and used solely as statistical records;

(k)(5)     investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)     material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD & BLOOMBERG L.P.,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE &
FEDERAL BUREAU OF INVESTIGATION,

*Defendants*.

Civil Action No. 25-cv-2848 (RCL)

# EXHIBIT F

1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
*Jason Leopold and Bloomberg, L.P. v. Department of Justice and Federal Bureau of Investigation*
**25-cv-2848**

| Page Disposition Totals |
|---|
| **Total:** 221 |
| RIF: 2 |
| RIP: 59 |
| WIF: 160 |
| • FOIA WIF:                                              158 |
| • Duplicate:                                                 2 |

## Exemption Application Index

| SUMMARY OF FOIA EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **EXEMPTION 3** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3)-1 | Grand Jury Information - Federal Rule of Criminal Procedure 6(e) |
| (b)(3)-8 | Child Victims' & Child Witnesses' Right Act – 18 U.S.C. §3509(d) |
| **EXEMPTION 5** | **PRIVILEGED INFORMATION** |
| (b)(5)-1 | Deliberative Process Privilege |
| (b)(5)-2 | Attorney Client Privilege |
| (b)(5)-3 | Attorney Work Product |
| **EXEMPTION 7A** | **PENDING LAW ENFORCEMENT PROCEEDINGS** |
| (b)(7)(A)-1 | Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings |
| **EXEMPTION 6 &7(C)** | **CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Other Identifying Information of FBI Special Agents and Support Personnel |
| (b)(6)-3 and (b)(7)(C)-3 | Names and Other Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 and (b)(7)(C)-4 | Names and Other Identifying Information of Third Parties of Investigative Interest |
| (b)(6)-5 and (b)(7)(C)-5 | Names of Non-FBI Federal Government Personnel |
| (b)(6)-8 and (b)(7)(C)-8 | Names and Other Identifying Information Regarding a Third Party Victims |
| **EXEMPTION 7(D)** | **CONFIDENTIAL SOURCE INFORMATION** |
| (b)(7)(D)-5 | Names and Other Identifying Information Provided by Individuals who Provided Information Under an Express Assurance of Confidentiality and Infortion Provided |
| **EXEMPTION 7(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-3 | FBI Internal E-mail Addresses, Non-Public Web Addresses, Computer Banner Lines and Non-Public Telephone Numbers |
| (b)(7)(E)-7 | Database Identifiers/Print outs |
| (b)(7)(E)-11 | CART (data, reports/notes) |
| (b)(7)(E)-21 | Informant program file numbers |
| (b)(7)(E)-30 | Resource Allocation |

| INDEX KEY | |
|---|---|
| RIF: | Released in Full |
| RIP: | Released in Part |
| WIF: | Withheld in Full |
| FOIA WIF: | Withheld in full pursuant to FOIA Exemptions |
| Dup: | Duplicate page that was withheld in full |
| Dup of: | Location of original copy |

| FBI DOCUMENT TYPES |
|---|
| Electronic Mail Messages (E-mails):  These documents consist of E-mails between FBI personnel, and/or between FBI personnel and Other Government Agency (OGA) personnel. |
| Resource Planning Office (RPO) Report documenting premium pay hours recorded on this project during the period of March 17 through March 22, 2025. |
| RPO Report documenting overtime hours worked by Records Information/Dissemination Section (RIDS) units from January |
| Transparency Project Introduction to FOIA Processing PowerPoint intended to provide processing guidance to personnel supporting the project. |
| Draft copies of FBI letters dated March 4, 2025 detailing the inquiry  response to Attorney General (AG) Bondi's February 27, 2025 memo. |
| FD-1036 – Sentinel Import Forms:  These are administrative forms attached to documents that are imported into the FBI's case administrative system, Sentinel. |
| Final Training Video intended to provide processing guidance to personnel supporting the project. |

| Document Description | BatesFBI(25-cv-2848) | b31 | b33 | b38 | b51 | b52 | b53 | b7A1 | b6/b7C1 | b6/b7C3 | b6/b7C4 | b6/b7C5 | b6/b7C8 | b7D5 | b7E3 | b7E7 | b7E11 | b7E21 | b7E30 | Duplicate | RIF | RIP | FOIA WIF | Dup | Dup Tu |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Email correspondance dated 03/18/2025, 6.51PM, Subject  Redactions | 1 | | | | | | | | | | | | | | x | | | | | | | x | | | |
|  | 2 | | | | | | | | | | | | | | x | | | | | | | x | | | |
|  | 3 | | | | | | | | | | | | | | x | | | | | | | x | | | |
| Report documenting  premium pay hours recorded during the period of March 17 through March 22, 2025. | 4 | | | | | | | | | | | | | | | | | | x | | | x | | | |
|  | 5 | | | | | | | | | | | | | | | | | | x | | | x | | | |
| Transparency Project Introduction to FOIA Processing PowerPoint v.1 (44 pages) | 6 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 7 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 8 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 9 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 10 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 11 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 12 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 13 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 14 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 15 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 16 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 17 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 18 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 19 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 20 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 21 | x | | x | | x | x | x | x | | | x | x | | | | | | | | | | x | | |
|  | 22 | | | x | | x | x | x | | x | | | x | x | | | | | | | | | x | | |
|  | 23 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 24 | | | | | x | x | | | | | | | | | | | x | | | | | x | | |
|  | 25 | | | | | x | x | | | | | | | | | | | x | | | | | x | | |
|  | 26 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 27 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 28 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 29 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 30 | | | | | x | x | x | x | | | x | | | | | | | | | | | x | | |
|  | 31 | | | | | x | x | | | | | | | | | | | | | | | | x | | |
|  | 32 | | | | | x | x | | | | | | | | | | | | | | | | x | | |

| Document Description | BatesFBI(25-cv-2848) | b3 1 | b3 3 | b3 8 | b5 1 | b5 2 | b5 3 | b7A 1 | b6/b7C1 | b6/b7C3 | b6/b7C4 | b6/b7C5 | b6/b7C8 | b7D5 | b7E3 | b7E7 | b7E11 | b7E21 | b7E30 | Duplicate | RIF | RIP | FOIA WIP | Dup | Dup Tu |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 33 |  | x |  | x | x | x | x | x |  |  |  | x |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 34 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 35 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 36 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 37 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 38 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 39 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 40 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 41 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 42 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 43 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 44 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 45 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 46 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 47 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 48 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 49 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 50 |  |  | x | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
| Draft copies of FBI letters dated March 4, 2025 detailing the inquiry response to Attorney General (AG) Bondi's February 27, 2025 memo. | 51 |  |  | x |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 52 |  |  | x |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 53 |  |  | x |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
| Email correspondance dated 04/15/2025, 8 02 PM, Subject  1A videos | 54 |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  | x | x |  |  |  |
|  | 55 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x | 57 |
|  | 56 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x | 58 |
|  | 57 |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |  |
| Email correspondance dated 04/15/2025, 8 03 PM, Subject  1A videos | 58 |  |  |  |  | x | x | x |  |  |  |  |  |  | x |  | x |  |  |  |  | x |  |  |  |
|  | 59 |  |  |  |  |  | x |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
| Email correspondance dated 05/02/2025, 10 55PM, Subject  INITIAL DRAFT of Epstein Overview | 60 |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |  |
|  | 61 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Attachment to Email correspondance dated 05/02/2025, 10 55PM, Subject  INITIAL DRAFT of Epstein Overview | 62 |  |  |  | x | x | x |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 63 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 64 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
| Email correspondance dated 03/18/2025  06 29PM  Subject  HQ request for Epstein Information | 65 |  |  |  |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
|  | 66 |  |  |  | x | x |  |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
| Attachment to Email correspondance dated 03/18/2025, 06 29PM, Subject  HQ request for Epstein Information | 67 |  |  |  | x | x |  |  | x |  |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |
|  | 68 |  |  |  | x | x |  |  | x |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
| Email correspondance dated 05/19/2025, 08 48AM, Subject  Epstein Question | 69 |  |  |  |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
| Printout of overtime hours worked by RIDS units from January  20  2025 through July 29  2025 | 70 |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  | x |  |  |  |
|  | 71 |  |  |  |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
|  | 72 |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |  |
| Email correspondance dated 03/22/2025, 06 29AM, Subject  3/22 IMD Specialized Project Updates | 73 |  |  |  |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
|  | 74 |  |  |  |  | x |  |  | x |  |  |  | x |  | x |  | x |  |  |  |  | x |  |  |  |
|  | 75 |  |  |  |  | x |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
| Email correspondance dated 03/22/2025, 06 49AM, Subject  3/22 IMD Specialized Project Updates | 76 |  |  |  | x |  |  |  | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |  |
|  | 77 |  |  |  |  | x |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  | x |  |  |  |
|  | 78 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 79 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 80 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 81 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 82 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 83 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 84 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 85 |  |  |  | x | x |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 86 |  |  |  | x | x |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 87 |  |  |  | x | x |  |  | x |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 88 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 89 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 90 |  |  |  | x | x | x | x |  |  | x |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 91 |  |  |  | x | x | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 92 |  |  |  | x | x | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 93 |  |  |  | x | x | x | x |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 94 |  |  |  | x | x | x | x |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 95 |  |  |  | x | x | x | x | x |  |  | x |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 96 |  |  |  | x | x | x | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 97 |  |  |  | x | x | x | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 98 |  |  |  | x | x | x | x |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 99 |  |  |  | x | x | x |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 100 |  |  |  | x | x | x |  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 101 |  |  |  | x | x | x | x |  |  |  |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |
|  | 102 |  |  |  | x | x |  |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 103 |  |  |  | x | x |  |  | x |  |  | x |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 104 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 105 |  |  |  | x | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 106 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 107 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 108 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 109 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 110 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 111 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 112 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 113 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 114 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 115 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 116 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 117 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 118 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 119 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |
|  | 120 |  | x |  | x | x |  |  | x |  |  |  | x |  |  |  |  |  |  |  |  |  |  | x |  |  |

| Document Description | BatesFBI(25-cv-2848) | b31 | b3 3 | b38 | b51 | b52 | b3 3 | b7A1 | b6/b7C1 | b6/b7C3 | b6/b7C4 | b6/b7C5 | b6/b7C8 | b7D5 | b7E3 | b7E7 | b7E11 | b7E21 | b7E30 | Duplicate | RIF | RIP | FOIA WIF | Dup | Dup Tu |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 121 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 122 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 123 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 124 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 125 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| Attachments to Email correspondance dated 03/22/2025, 06:49AM, Subject 3/22 IMD Specialized Project Updates | 126 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 127 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 128 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 129 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 130 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 131 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 132 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 133 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 134 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 135 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 136 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 137 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 138 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 139 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 140 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 141 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 142 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 143 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 144 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 145 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 146 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 147 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 148 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 149 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 150 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 151 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 152 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 153 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 154 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 155 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 156 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 157 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 158 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 159 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 160 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 161 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 162 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 163 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 164 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 165 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 166 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 167 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 168 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 169 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 170 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| | 171 | | | x | x | x | | | | x | | | x | | | | | | | | | | x | | |
| Email correspondance dated 03/22/2025, 07:35AM, Subject IMD Specialized Project Updates - Transparency Project Instruction | 172 | | | | | x | | | | x | | | | | x | | | | | | | x | | | |
| | 173 | | | | | | | | | | | | | | | | | | | | x | | | | |
| | 174 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/22/2025, 12:47PM, Subject IMD Transparency Project Updates | 175 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| | 176 | | | | | | | | | x | | | | | | | | | | | | | x | | |
| | 177 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/22/2025 01:07PM  Subject  IMD Transparency Project Updates | 178 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/22/2025, 08:09PM, Subject  IMD Transparency Project Updates | 179 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| | 180 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| | 181 | | | | | | | | | x | | | | | | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 11:23AM, Subject  IMD Specialized Project Updates -Transparency Project | 182 | | | | | | | | | x | | | | | | | | | | | | | x | | |
| | 183 | | | | | | | | | x | | | | | | | | | | | | | x | | |
| | 184 | | | | | | | | | x | | | | | | | | | | | | | x | | |
| | 185 | | | | | x | | | | x | | | | | | | | | | | | | x | | |
| Email correspondance dated 03/23/2025 11:48AM  Subject  IMD Specialized Project Updates -Transparency Project | 186 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 12:42PM, Subject  IMD Specialized Project Updates -Transparency Project | 187 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 01:36PM, Subject  IMD Specialized Project Updates -Transparency Project | 188 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025 01:40PM  Subject  IMD Specialized Project Updates -Transparency Project | 189 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 02:07PM, Subject  IMD Specialized Project Updates -Transparency Project | 190 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 02:31PM, Subject  IMD Specialized Project Updates -Transparency Project | 191 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 02:57PM  Subject  IMD Specialized Project Updates -Transparency Project | 192 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 03:15PM, Subject  IMD Specialized Project Updates -Transparency Project | 193 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 03:46PM, Subject  IMD Specialized Project Updates -Transparency Project | 194 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025 05:13PM  Subject  IMD Specialized Project Updates -Transparency Project | 195 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 05:46PM, Subject  IMD Specialized Project Updates -Transparency Project | 196 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025 06:40PM  Subject  IMD Specialized Project Updates -Transparency Project | 197 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 06:43PM, Subject  IMD Specialized Project Updates -Transparency Project | 198 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 08:29PM, Subject  IMD Specialized Project Updates -Transparency Project | 199 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025 08:46PM  Subject  IMD Specialized Project Updates -Transparency Project | 200 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 08:58PM, Subject  IMD Specialized Project Updates -Transparency Project | 201 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025, 10:21PM, Subject  IMD Specialized Project Updates -Transparency Project | 202 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/23/2025 11:18PM  Subject  IMD Specialized Project Updates -Transparency Project | 203 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/24/2025, 02:48AM, Subject  IMD Specialized Project Updates -Transparency Project | 204 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/24/2025, 08:51AM, Subject  IMD Specialized Project Updates -Transparency Project | 205 | | | | | x | | | | x | | | | | x | | | | | | | | x | | |
| | 206 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/24/2025, 10:27AM, Subject  IMD Specialized Project Updates -Transparency Project | 207 | | | | | | | | | x | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/24/2025 12:26PM  Subject  IMD Specialized Project Updates -Transparency Project | 208 | | | | | | | | | x | | | | | x | | | | | | | | x | | |

| Document Description | BatesFBI(25-cv-2848) | b31 | b3 3 | b38 | b51 | b52 | b5 3 | b7A1 | b6/b7C1 | b6/b7C3 | b6/b7C4 | b6/b7C5 | b6/b7C8 | b7D5 | b7E3 | b7E7 | b7E11 | b7E21 | b7E30 | Duplicate | RIF | RIP | FOIA WIF | Dup | Dup Tu |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Email correspondance dated 03/24/2025, 01 56PM, Subject IMD Specialized Project Updates -Transparency Project | 209 | | | | | x | | | x | | | | | | x | | | | | | | | x | | |
| Email correspondance dated 03/24/2025 02 45PM Subject IMD Specialized Project Updates -Transparency Project | 210 | | | | | x | | | x | | | | | | x | | | | | | | | x | | |
| FD-1036 dated 09/18/2025, Titled Public Release List | 211 | | | | | | | | x | | | | | | x | | | | | | | | x | | |
| Attachment to FD-1036 dated 09/18/2025, Titled Public Release List | 212 | | | | x | x | | | x | x | | | | | | | | | | | | | x | | |
| | 213 | | | | x | x | | | | x | | | | | | | | | | | | | x | | |
| | 214 | | | | x | x | | | | x | | | | | | | | | | | | | x | | |
| | 215 | | | | x | x | | | x | x | | | | | | | | | | | | | x | | |
| | 216 | | | | x | x | | | | | | | | | | | | | | | | | x | | |
| FD-1036 dated 10/14/2025, Titled Transparency Project SharePoint Video Transcripts | 217 | | | | | | | | x | | | | | | | | | | | | x | | | | |
| Attachment to FD-1036 dated 10/14/2025, Titled Transparency Project SharePoint Video Transcripts | 218 | | | | x | x | | | | | | | | | | | | | | | | | x | | |
| | 219 | | | | x | x | | | | | | | | | | | | | | | | | x | | |
| | 220 | | | | x | x | | | | | | | | | | | | | | | | | x | | |
| Final Training Video | 221 | | | | x | x | | | x | | | | | | x | x | | | | | | | x | | |