**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD,<br>BLOOMBERG L.P., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-02848 – RCL |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DECLARATION OF VANESSA R. BRINKMANN**

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.     I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ or Department).  In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP – a role I have served in some form since 2008. Prior to becoming Senior Counsel, I served as Counsel to the IR Staff, as an Attorney-Advisor and, from 2003-2008, as a Government Information Specialist (formerly FOIA Specialist) on the IR Staff.  The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from the following seven DOJ components: the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (OPA), and the Executive Secretariat (OES) (collectively, the OIP FOIA Clients).

1

2.      The IR Staff devises appropriate records searches for each FOIA request it processes on behalf of OIP FOIA Clients and determines whether there are responsive records appropriate for release in accordance with the FOIA.  In processing such requests, the IR Staff consults with personnel in these components and, when appropriate, with other components within DOJ, as well as with others in the Executive Branch.

3.      I make the statements herein on the basis of personal knowledge, including my extensive experience with the FOIA, with OIP, and in handling FOIA requests for senior leadership offices, and information provided to me by others within the Department with knowledge of the information at issue in this case.

**Plaintiffs' FOIA Request**

4.      On July 8, 2025, Plaintiffs submitted a FOIA request to the Department, using OIP's online FOIA submission portal, seeking records from the OPA and OAG.[1]  A true and correct copy of Plaintiffs' FOIA request is attached hereto as Exhibit A.

5.      By letter dated August 5, 2025, OIP acknowledged receipt of Plaintiffs' FOIA request.  A true and correct copy of OIP's acknowledgement letter is attached hereto as Exhibit B.

6.      By letter dated November 24, 2025, OIP provided a final response to Plaintiffs' FOIA request, withholding one responsive document in full pursuant to Exemption 5 of the FOIA, 5. U.S.C. § 552(b)(5).  A true and correct copy of OIP's final response letter is attached hereto as Exhibit C.

---

[1] Plaintiffs' request also lists the Office of Information Policy; however, OIP construed this to account for OIP's role in handling FOIA requests on behalf of OAG and OPA.

**Description of OIP's Search**

7.      Upon receipt of a FOIA request, OIP makes determinations both as to the appropriate offices in which to conduct an initial records search and as to the records repositories and search methods to use in conducting records searches on behalf of the OIP FOIA Clients. OIP bases its assessment of where responsive records are likely maintained on a review of the content of the request itself and the nature of the records sought, as well as OIP's familiarity with the types and locations of records that each OIP FOIA Client maintains, discussions with knowledgeable personnel in these offices or elsewhere in the Department, and additional research that OIP staff may conduct on the topic of the request to assist with its assessment. Depending on the request, OIP may utilize different search methods, such as a search of paper records or electronic searches of email systems, shared drives, or other electronic files or databases.  At times, OIP will also inquire directly with knowledgeable officials in relevant OIP FOIA Client offices to ascertain whether records exist and/or to inform search parameters.

8.      To ensure a reasonably thorough search, OIP regularly assesses potential additional locations or alternative search methods to identify potentially responsive records and initiates additional searches as appropriate.  OIP may have ongoing discussions with staff within the Department who are knowledgeable about the potential locations of records to determine where, and to what extent, potentially responsive records may exist that would not be identified via typical search methodologies (such as within classified records systems).  Overall, OIP employs an iterative search methodology that is tailored to the requirements of each individual FOIA request.

9.     Plaintiffs' FOIA request seeks "final talking points" from OAG or OPA[2] purportedly "relating to the Justice Department's final decision on July 7 to refrain from releasing additional records related to the Jeffrey Epstein investigation, his 'client list' and his suicide in a New York jail as well as the release of the raw and enhanced video footage of the common area of the Special Housing Unit (SHU) where Epstein was housed at the time of his death." See ECF No. 1-2 at 18 (marked "Exhibit 16").  Based on the substance of the request, OIP determined that Plaintiffs were likely referring to the subject matter addressed in a memorandum issued by the Federal Bureau of Investigation and Department of Justice on July 6, 2025[3] [hereinafter "July 6 Memorandum"].  OIP determined that OAG and OPA were the appropriate offices to search – both because these offices were specifically identified in Plaintiffs' request and because these offices were reasonably likely to have the requested information, to the extent it existed.

10.     Moreover, because Plaintiffs' request seeks one specific and final document, OIP determined that the most effective and efficient way to conduct a reasonably tailored search for the final talking points sought by Plaintiffs would be to inquire with knowledgeable officials in OAG and OPA.  OIP therefore coordinated outreach to individuals in OAG and OPA with knowledge of the Epstein matter and the types of records created in response to the July 6 Memorandum.  As a result of these searches, one document, totaling one page, responsive to Plaintiffs' request was located.

---

[2] See supra note 1.  OIP maintains records related to the FOIA matters under its purview and would not maintain the types of records sought in Plaintiffs' request.
[3] July 6, 2025 Memorandum, available at https://www.justice.gov/opa/media/1407001/dl?inline.

*A. OAG Search*

11.      OAG is responsible for the overall supervision and direction of the administration and operations of the Department.  See https://www.justice.gov/ag/oag-freedom-information-act.

12.      OIP coordinated outreach to three individuals in OAG identified as most likely to be knowledgeable as to the existence of records responsive to Plaintiffs' request; specifically, the Counselor to the Attorney General responsible for FOIA, another relevant Counselor to the Attorney General, and the Special Assistant to the Chief of Staff to the Attorney General.  The sum of these discussions was that none of these staff members was aware of "final talking points" concerning a "final decision" by the Department of Justice on or about July 6, 2025; and that to the extent talking points had been prepared, they would have been prepared by the Senior Officer for Public Affairs in OPA or the OPA Deputy Director.

*B. OPA Search*

13.      OPA is the principal point of contact for the Department with the news media and is the Departmental office responsible for ensuring that the public is informed about the Department's activities and about the priorities of the Attorney General and President regarding law enforcement and legal affairs.  See www.justice.gov/opa.

14.      OIP coordinated outreach to two officials in OPA:  the Senior Officer for Public Affairs and the Deputy Director, both of whom had been identified by OAG (as detailed above) as the staff who would have prepared responsive talking points, if any had been created.  In response, OPA identified a one-page responsive document, consisting of final talking points sent by OPA to an OAG staff assistant.  As an additional measure, the OAG staff assistant to whom the talking points were sent later conducted a search of his emails to determine whether any

additional final talking points were sent.  No additional final talking points were located pursuant to that search.

15.    Based on my experience with the Department, my familiarity with the records maintained by the OIP FOIA Clients, and my discussions with knowledgeable Department personnel, I have determined that OIP's searches in this case were reasonably calculated to uncover all potentially responsive materials.

## Exemption 5:  Deliberative Process Privilege

16.    The record withheld in full in this case consists of final talking points drafted by OPA and transmitted to OAG on July 7, 2025.  As a pre-decisional, deliberative internal Department record, it is wholly protected by the deliberative process privilege encompassed by FOIA Exemption 5.

### A.  Exemption 5's Threshold

17.    Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The one-page record withheld in full originated in OPA and was transmitted by OPA to OAG.  The record was generated by, exchanged within, and remains wholly internal to, the Department.  As such, it is an "inter- or intra-agency" record within the threshold of Exemption 5.

### B.  Application of the Deliberative Process Privilege

18.    The deliberative process privilege protects the integrity and quality of the Department's internal decisionmaking process by shielding this process from public scrutiny. For information to be withheld pursuant to the deliberative process privilege, it must be both "pre-decisional" and "deliberative."

19.    The talking points withheld in full are pre-decisional because they were created to prepare the decisionmaker, in this case the Attorney General, about how she may later decide to interact with the press.  As such, even though the record at issue is the "final" version of the talking points, it does not embody the agency's final decision; rather, it remains pre-decisional to any future final decision about what information to convey to the press by the Attorney General herself.  Only the Attorney General's decided statements and responses to the press embody the final decision of the Department.

20.    The withheld talking points are deliberative because they consist of anticipated questions that may arise in future press interactions, suggested statements that the Attorney General may contemplate making (or that may inform her ultimate decision about what to say), and selected contextual information that is culled from a larger universe of information (that itself reflects a deliberative process in suggesting what factual information might be relevant to the Attorney General's decisionmaking).  The talking points reflect "up-the-chain of command" suggestions, recommendations, and advice from public affairs specialists to the Department's leadership that are essential to the integrity of the Department's decisionmaking process.

*C.  Foreseeable Harm*

21.    The deliberative process privilege enhances the integrity of agency decisionmaking by withholding pre-decisional, deliberative information from public scrutiny. There is reasonably foreseeable harm in release of the withheld talking points because disclosure would cause public confusion about actual Departmental positions, since the Department's final position (as it relates to talking points) is what is ultimately said by the Attorney General publicly, not what is suggested to her by a subordinate preceding that decision.  Furthermore, there is reasonably foreseeable harm in release of the talking points because disclosure would

discourage open and frank discussion among agency employees. Department employees would be reticent to draft talking point documents for senior officials' use for fear that their suggestions would later be released to the public. Departmental decisionmaking is at its best when employees feel unencumbered to make recommendations and to provide advice to decisionmakers without fear that their unadopted thoughts will later be publicly released. The Department's official position has been released to the public through statements made by the Attorney General, and the July 6 Memorandum itself.

## C. Segregation of Non-Exempt Information

22.     Lastly, OIP reviewed the responsive record to determine whether it contained any non-exempt information that could be segregated for release. Because all factual information within the record is inextricably intertwined within the suggested talking points, and because the selection of those facts from within a larger universe of potentially relevant information itself reflects a deliberative process, no information within the record can be segregated for release to Plaintiffs.

## Exemption 6

23.     Portions of the record withheld in full are also being withheld pursuant to Exemption 6 of the FOIA. Exemption 6 pertains to information the release of which "would constitute a clearly unwarranted invasion of personal privacy" of individuals. 5 U.S.C. § 552(b)(6).

24.     When determining whether to withhold information pursuant to Exemption 6, OIP assesses both whether there is a more than a de minimis privacy interest at stake and whether there is any "FOIA public interest" in disclosure, and if so, balances those interests to determine whether protection of the information is appropriate under the FOIA. In order to withhold

information pursuant to Exemption 6, a balancing of the privacy interests of the individuals against any FOIA public interest in disclosure must weigh in favor of non-disclosure.

25.    In conducting the balancing analysis for Exemption 6, the FOIA public interest considered is limited to information which would shed light on DOJ's performance of its mission: to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.  The privacy interest OIP considers takes into account whether a disclosure would invade the personal privacy of an individual.

26.    Within the final talking points withheld in full pursuant to Exemption 5 of the FOIA, OIP also withheld the name of a Department employee, and the contact information of two employees, pursuant to Exemption 6.  Specifically, OIP withheld (1) the name of an employee who serves in an administrative support, non-policymaking and non-decisionmaking role, as a staff assistant in OAG, and (2) the direct contact information of the OAG staff assistant and of an OPA employee.

### A.  Employee Name

27.    In assessing whether there is any FOIA public interest in disclosure of the name of a Department employee serving an administrative, non-policymaking and non-decision-making role, OIP considered the mission of the Department and whether revealing this individual's name sheds light on the operations and activities of the Department.  Because this individual is not in a policymaking or decisionmaking role, OIP determined that releasing the

name of this Department employee would in no way enhance the public's understanding of how the Department carries out its duties.

28.     OIP also considered the privacy interests of this individual and determined that the release of their name would cause unsolicited and unwanted contact and/or harassment.  OIP determined that the privacy interests of this individual outweigh the lack of FOIA public interest in disclosure of their name.  As such, this information has been protected pursuant to Exemption 6 because its release would constitute a clearly unwarranted invasion of the personal privacy of this particular Department employee.

*B.  Employee Contact Information*

29.     In assessing whether there is any FOIA public interest in disclosure of the direct contact information of Department employees, OIP considered the mission of the Department and whether revealing this contact information sheds light on the operations and activities of the DOJ.  OIP determined that releasing this information would in no way enhance the public's understanding of how the Department carries out its duties.

30.     OIP also considered the privacy interests of the employees and determined that the release of their contact information would cause unsolicited and unwanted contact and/or harassment.  OIP determined that the privacy interests of these individuals outweigh the lack of FOIA public interest in disclosure of their personal contact information.  As such, this information has been withheld pursuant to Exemption 6 because its release would constitute a clearly unwarranted invasion of the personal privacy of these Department employees.

31.     For these reasons, OIP determined that release of the Department employee's name and employee contact information would result in reasonably foreseeable harm to interests protected by Exemption 6.  Given the specifically identifiable nature of the information withheld,

OIP is not able to segregate for release any information withheld under Exemption 6 without constituting and unwarranted invasion of personal privacy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Vanessa R. Brinkmann
Senior Counsel
Office of Information Policy

Executed this 24th day of November 2025.

# Exhibit A

**Request**

---

Request Information

| | |
|---|---|
| Request Number | FOIA-2025-05804 |
| Request Type | Request |
| Request Date | 07/08/2025 |
| Perfected Date | 07/08/2025 |
| Due Date | 08/05/2025 |
| Request is in Litigation | |
| Unusual Circumstances | |
| Significant | No |
| Coordination | No |
| Track | Complex |
| Agency | OIP |
| Document Delivery Method | Email |
| Topic | |
| eDiscovery Number | |
| FOIA.gov Request ID | |
| Sending Agency | |
| Agency Point of Contact | |
| Agency Tracking Number | |
| Litigation Information | |
| First Name of Litigator | |
| Last Name of Litigator | |
| Litigator Office | |
| Case Name | |
| Federal District Court | |
| Litigation Short Description | |
| Litigation Reviewer | |

| | |
|---|---|
| Case Number | |
| Date of Final Adjudication by Court | |
| Requester Information | |
| Salutation | Mr. |
| First Name | Jason |
| Middle Name | |
| Last Name | Leopold |
| Email Address | jasonleopold@gmail.com |
| Organization | Bloomberg News |
| Register Number | |
| Phone Number | 2132704334 |
| Fax Number | |
| Other Information | |
| Address Type | Home |
| Country | United States |
| Address Line 1 | |
| Address Line 2 | |
| Military Branch | |
| City | |
| State | |
| Province | |
| Zip/Postal Code | |
| Description of Request | |
| Summary of Request | records of final talking points of the Offices of the Attorney General and Public Affairs concerning the release of additional records from the Jeffrey Epstein investigation |
| Description | I request disclosure from the Department of Justice Office of Information Policy, Office of Public Affairs and Office of the Attorney General the following records:

1. Final talking points relating to the Justice Department's final decision on July 7 to refrain from releasing additional records related to the Jeffrey Epstein investigation, his "client list" and his suicide in a New York jail as well as the release of the raw and enhanced video footage of the common area of the Special Housing Unit (SHU) where Epstein was housed at the time of his death.

Reasonably Foreseeable Harm.  The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):

(A) An agency shall--

(i) withhold information under this section only if-- |

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information. . . .

DOJ should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part.

INSTRUCTIONS REGARDING SCOPE AND BREADTH OF REQUESTS
Please interpret the scope of this request broadly. The DOJ is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

File Type 1

File 1                *No Attachment*

File Type 2

File 2                *No Attachment*

File Type 3

File 3                *No Attachment*

Expedited Processing Information

Expedited
Processing
Requested?

Expedited
Processing
Request Date

Expedited
Processing
Determination

Expedited
Determination
Date

Expedited
Requested Due
Date

Standards for
Expedition

| | |
|---|---|
| Expedited Justification | |
| Fee Information | |
| Will Pay Up To | $250 |
| Fee Category | Representative of the news media |
| Fee Waiver Requested? | Yes |
| Fee Waiver Granted? | |
| Fee Waiver Justification | I am a senior investigative reporter for Bloomberg News and formerly senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America. I am filing this request on behalf of myself and Bloomberg News.

I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.

Under 5 U.S.C. §552(a)(4)(A)(iii), "Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Disclosure in this case meets the statutory criteria, as the records sought to detail the operations and activities of government. This request is also not primarily in my commercial request, as I am seeking the records as a journalist to analyze and freely release to members of the public.

If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.

I will appeal any denial of my request for a waiver administratively and to the courts if necessary. |
| Records Management | |
| Disposition Date | |
| Marked for Disposition | |

Disposition
Confirmed

Disposition
Confirmed By

Workflow State        Submitted

Workflow Status       Submitted

Assigned
Analyst

IR Reviewer

# Exhibit B



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

August 5, 2025

Jason Leopold
Bloomberg News
1669 Benedict Canyon Drive
Beverly, CA 90210
jasonleopold@gmail.com                    Re:    FOIA-2025-05804

Dear Jason Leopold:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on July 8, 2025, in which you requested records of final talking points concerning the decision to refrain from releasing additional records from the Jeffrey Epstein investigation.

The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time, we have assigned your request to the complex track.

Please be advised that the records search options available are dynamic and can be adjusted according to the types of records you are seeking. In general, there are five categories of records search options available to you:

| 1 | Official Correspondence | This category includes final, signed communications, memoranda, policies, and guidelines. |
|---|---|---|
| 2 | Emails and Attachments | This category includes emails sent or received by Department officials and records attached thereto. |
| 3 | Calendars | This category includes the electronic calendar of Department officials. |
| 4 | Standalone Documents | This category includes both electronic computer records and non-electronic (i.e. paper) records of Department |

-2-

| | | officials to the extent that such records were not attached to an email.[1] |
|---|---|---|
| 5 | Classified Records | This category includes both electronic and non-electronic (i.e. paper) classified records maintained by Department officials. |

The time required to complete our records search will vary significantly depending on the types of records that need to be searched in order to fulfill your request. Furthermore, there are distinct and significant differences between the search time required to complete certain categories of records searches. For example, a records search focused on category 1 records (Official Correspondence) requires the least amount of time to complete. A records search seeking records from categories 2 and/or 3 requires significantly more time than that of category 1. Whereas a search seeking records from categories 4 and/or 5 is the most time-consuming search option and requires substantially more time to complete than a search focused on records of categories 2 and/or 3.

Additional factors, including the timeframe of your request and the number of Department officials who need to be searched in order to fulfill your request, can make a substantial difference in the time it takes to complete our records search. Generally speaking, requests seeking records prior to January 20, 2017, will require additional search time, and the more Department officials that are subject to the records search, the longer it will take to complete.

At this time and in an effort to facilitate our response to your request, we are focusing our records search on official correspondence (i.e. category 1) and emails and attachments that may be responsive to your request (category 2). Based on our experience, the vast majority of records responsive to FOIA requests consist of category 2 records, and it is not common for there to be standalone documents (category 4) that are not also located as attachments to emails. If you are interested in either adding additional categories of records to your search or focusing your search on records other than categories 1 and 2, please notify this Office as soon as possible.[2] You may also agree to an alternative formulation of your request, including a different scope or date range. Please include the administrative tracking number associated with this request in all your correspondence.

Any decision with regard to the application of fees or any request for a fee waiver will be made only after we determine whether fees will be implicated for this request.

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss the processing of your request, you may contact this Office by telephone at the above number, by e-mail at doj.oip.foia@usdoj.gov, or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly,

---

[1] This category does not include Official Correspondence (i.e. category 1 records).
[2] Notwithstanding your selection, not all of these categories would be appropriate for each request.

-3-

you may contact our Acting FOIA Public Liaison, Eric Hotchkiss, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Sincerely,

Initial Request Staff
Office of Information Policy
U.S. Department of Justice

# Exhibit C



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

November 24, 2025

Jason Leopold
Bloomberg News
1669 Benedict Canyon Drive          Re:    FOIA-2025-05804
Beverly, CA 90210                          25-cv-2848 (D.D.C)
jasonleopold@gmail.com                     VRB: BRV: KCQ

Dear Jason Leopold:

This is a final response to your Freedom of Information Act (FOIA) request, dated and received in this Office on July 8, 2025, for certain "final talking points" of the Offices of the Attorney General (OAG) and Public Affairs (OPA).[1]

A search was conducted in OAG and OPA and one record, totaling one page, responsive to your request was located.  I have determined that this record should be withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).  Portions of the record are also being withheld pursuant to Exemption 6 of the FOIA 5 U.S.C. § 552(b)(6).  Exemption 5 pertains to certain inter- and intra- agency communications protected by civil discovery privileges, including the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of personal privacy.  Please be advised that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Michael Gerardi of the Department's Civil Division, Federal Programs Branch, at (202) 616-0680.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

---

[1] Your request also lists the Office of Information Policy; however, we understand this to account for this Office's role in handling FOIA requests on behalf of OAG and OPA.  This Office maintains records related to the FOIA matters under our purview and would not maintain the records you seek.